George R. Maxwell v. Robert T. Burton.

| 2 | 595 |
| 4 | 389 |
| 10* | 611 |

| 2 | 595 |
| 19 | 31 |
| 19 | 34 |

GEORGE R. MAXWELL, RELATOR, *v.* ROBERT T. BURTON, RESPONDENT.

1. MANDAMUS AND CERTIORARI.—There is a wide difference in the office of the two writs, *mandamus* and *certiorari;* the former is one of mandate while the latter is one of review.

2. MANDAMUS, JURISDICTION IN.—The Supreme Court has jurisdiction to issue writs of *mandamus* in cases provided by statute.

3. SECTION 445 OF THE PRACTICE ACT CONSTRUED.—Section 445 of our Practice Act, which provides that any court in this Territory, (except a justice court,) may issue a writ of *mandamus*, is not in conflict with either the Poland Bill or the Organic Act.

4. MANDAMUS WILL NOT UNDO AN ACT DONE.—The office of a writ of *mandamus* is to compel the performance of an act which the law specially enjoins, and not to undo an act already done.

Original application to the Supreme Court for writ of *mandamus*.

The facts appear in the opinion.

*Sutherland & McBride,* for relator.

*Snow & Snow, J. L. Rawlins, Richards & Williams, Bennett & Harkness* and *A. Miner,* for respondent.

HUNTER, C. J., delivered the opinion of the court:

A petition was presented to this court at its present session

by the relator for a writ of *mandamus* to compel Robert T. Burton, assessor and register of voters for Salt Lake County, Utah Territory, to erase and strike from the list of voters of Salt Lake County made by him, the names of the following persons, viz.: Emmeline B. Wells, Maria M. Blythe and Mrs. A. G. Paddock, and also the names of all women whose names thereon appear on the aforesaid list, or that he show cause be-fore the court on the 29th day of September why he has not done so. Also, that in the meantime the said officer be ordered not to return said list, or any copy thereof, to any election officer until the further order of this court.

An alternative writ was ordered at the time of filing the petitition, and the cause came up for hearing on the day men-tioned in the alternative writ, to-wit: September 29, 1880.

The respondent, on the day fixed for the hearing, appeared by counsel, who interposed a demurrer to the petition and writ, assigning as grounds therefor:

*First*—That the court has no jurisdiction of the subject of this action.

*Second*—Neither the petition nor writ herein state facts sufficient to constitute a cause of action.

Thus raising two questions for the determination of this court.

It has been heretofore held by the Supreme Court of this Territory, in the case of *Sheppard* v. *Second District Court*, that this court has no original jurisdiction to issue *mandamus*, except to enable it to exercise its appellate jurisdiction. And the court in that case cites sections 1907, 1866 and 1869 of the Revised Statutes of the United States, and the third sec-tion of an act entitled " An Act in Relation to Courts and Judicial Officers in the Territory of Utah," (Poland law,) which are as follows:

Section 1907—" The judicial power of Utah shall be vested in a Supreme Court, District Court, Probate Court and the justice of the peace."

Section 1866—" The jurisdiction, both appellate and original

of the courts provided for by section 1907, shall be limited by law."

Section 1869—" Writs of error, bills of exceptions and appeals shall be allowed in all cases from the final decisions of the District Court to the Supreme Court of all the Territories respectively, under such regulations as may be provided by law; but in no case removed to the Supreme Court shall trial by jury be allowed in that court."

Section 3, Judicial Act—" The District Court shall have exclusive original jurisdiction in all suits and proceedings in chancery, and in all actions at law in which the sum or value of the thing in controversy shall be $300 or upwards."

The Supreme Court, in passing upon these laws in the decision cited, says: " Regarding the acts of Congress as the supreme law of this Territory, having a controlling power similar to, if not co-extensive with the constitution of any particular State, over their respective legislatures and judicial departments, we are forced to the conclusion that, in so far as section 445 of our Practice Act, which provides that the writ of *mandamus* may be issued by any court of this Territory, except a justice of the peace, is in conflict with the acts of Congress above referred to, it is wholly inoperative and void."

The decision of the court is based upon the theory that the acts of Congress in reference to the courts referred to are paramount to all Territorial legislation. In this theory we now concur, and if there is any Congressional enactment which has the effect of making inoperative and void section 445 of the Practice Act, then, of course, the act is void so far as it confers upon this court power to issue *mandamus*, except in the exercise of its appellate jurisdiction. It is insisted that the third section of the Act in relation to Courts and Judicial Officers in the Territory of Utah, as above quoted, resolves that question. To a certain extent said third section has the effect of limiting the jurisdiction of this court, but only to that certain extent. It confers upon the District Court exclusive original jurisdiction in all suits or proceedings in

chancery, and in all actions at law in which the sum or value of the thing in controversy shall be $300 or upwards.

To determine, therefore, whether the Congressional enactment destroys the legislative enactment, we must look into the character of the proceedings wherein the rule is sought to be applied. Clearly, if the case is a suit or proceeding in chancery, then the exclusive original jurisdiction over it is in the District Court: and if the case be an action at law, to which the sum or value of the thing in controversy shall be $300 or upwards, then the exclusive original jurisdiction over it is in the District Court.

But if it is not a suit or proceeding in chancery, or it is not a suit at law wherein the sum or value of the thing in controversy is $300 or upwards, then the District Court does not, by virtue of the third section, obtain the exclusive original jurisdiction. The Poland Bill confers upon justices of the peace jurisdiction in all cases where the debt or sum claimed shall be less than $300, thus giving to justice's courts concurrent jurisdiction with the District Courts in such cases where the amount in controversy is less than $300.

Section 445 of the Practice Act provides that the writ of *mandamus* "may be issued by any court in this Territory, except a justice's, to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station." Under this provision the relator has applied to this court for the writ, and the demurrer interposed to his complaint and affidavit raises the jurisdictional question, and in resolving that question it becomes our duty to apply the rule of construction heretofore referred to. The case is not a suit or proceeding in chancery, and therefore the District Court has not exclusive original jurisdiction over it, nor is the amount involved in it $300 or upwards, nor is it less than $300.

It has no nominal value whatever, and has no element calling for the chancery powers of the court, but it is of that class

George R. Maxwell v. Robert T. Burton.

of cases in which the Practice Act confers upon this court, under the broad term " any court," jurisdiction to issue writs of *mandamus*.

To my mind there is a wide difference in the office of the two writs, viz.: *mandamus* and *certiorari*. The former is termed in our statute a writ of mandate and the latter a writ of review.

Clearly in the one case looking to the enforcement of some act or duty refused to be done by an officer in the execution of a trust which by law he is required to do or perform. In the other looking to certain proceedings had by some inferior tribunal, wherein there is alleged error or other informality in the proceeding, which the superior court issuing the writ, desires to review to ascertain if or not the error or informality exists.

In the case of the writ of *certiorari* I have no doubt of the power of this court to issue it for the purposes prescribed by the statute.

In the case of the writ of *mandamus*, I hold it can only be issued in the particular cases provided by the statute, and that the statute limits the power to issue it to such cases wherein it is sought to compel the performance of any act which the law specially enjoins as a duty resulting from an office, trust or station.

This case is not of the kind here spoken of. The officer against whom this writ is directed has performed his duty. We are not called upon to command him to do any duty he has failed or refused to perform, but we are asked to compel him to undo an act which the law compelled him to do and he has done. This we cannot do.

The validity of the law which imposed the duty upon the respondent to enter the names of the persons named in the register, cannot be brought into question in a proceeding of this kind. We find that there is a law on our statute books in reference to registration, compelling the respondent to do what we are now asked to compel him to undo. We cannot,

for the purpose of this proceeding, inquire into its validity. Having satisfied ourselves that the duty required by the statute to be performed has been performed, nothing is left for us to do. The office of the writ is not to require respondent to do something not within the scope of his official authority. Beyond that he cannot go, and this court could not compel him to exceed the functions of his office. In this case it was the duty of the respondent to enter the names upon the register, and having so entered them he could not afterwards legally erase them, and if he could not then this court cannot, through the agency of the writ of *mandamus*, compel him to.

Section 2 of the act of February 22, 1878, provides that it shall be the duty of the assessor of each county, in person or by deputy, at the time of making the annual assessment for taxes in each year, beginning in 1879, to take up the transcript of the next preceding registration list, and proceed to the revision of the same; and for this purpose he shall visit every dwelling-house in each precinct, and make careful inquiry if any person whose name is on his list has died or removed from the precinct, or is otherwise disqualified as a voter of such precinct, and, if so, to erase the same therefrom; or whether any qualified voter resides therein whose name is not on his list, and, if so, to add the same thereto in the manner provided in the preceding section.

The preceding section imposes upon the registration officers the duty of visiting every dwelling-house in each precinct and of making careful inquiry as to any or all persons entitled to vote, and to ascertain upon what ground such person claims to be a voter, and shall require each person entitled to vote, and desiring to be registered, to take and subscribe an oath, in form or substance as therein prescribed.

Section 3 provides that it shall be the duty of each assessor in person or by deputy, during the week commencing the first Monday in June of each year, at his office, to enter on his registry list the name of any voter that may have been omitted, on such voter appearing and complying with the provision of

the first section of this act required for voters for registration purposes.

By section 4 he is required, on the completion of this list, to make out a list, in alphabetical order, for each precinct, and to deliver the same on or before July 1st in each year, with all the affidavits, to the clerk of the County Court.

Having performed the duties thus prescribed, the functions of the assessor cease, and he has no further duty to perform with the registration list, until the beginning of the year 1880, and having for that year pursued the same course, he has no further duty to perform with the registration list for 1880, until the beginning of the year 1881, and the list for 1880 is the one from which it is now sought to have the erasure made. This same act of February 22, 1878, provides how the name of any person in said registration list may be stricken therefrom and by whom it shall be done.

Section 7. The clerk of the County Court shall file, and carefully preserve all said affidavits and registry lists and shall make a copy of each precinct registry list, and cause the same to be posted up at least fifteen days before any election, at or near the place of election, and shall make and transmit another copy to the judges of election.

Section 8. The clerk of the County Court, shall cause to be printed or written a notice which shall designate the offices to be filled, and stating that the election will commence at ——— (designating the place for holding the polls,) one hour after sunrise, and continue until sunset on the ——— day of ———, 18—. (Naming the day of election.) Dated at ——— A. D. 18—. ——— ———, Clerk of the County Court. A copy of which shall be posted up, at least fifteen days before the election, in three public places in said precinct, best calculated to give notice to all voters. It shall also be the duty of the clerk of the County Court to give notice on the lists so posted, that the senior justices of the peace for said precinct will hear objections to the right to vote, of any person registered, until sunset of the fifth day preceding the day of elec-

tion. Said objections shall be made by a qualified voter in writing and delivered to the said justice who shall issue a written notice to the person objected to, stating the place, day and hour when the objection will be heard. The person making the objection shall serve, or cause to be served, said notice upon the person objected to, and shall also make returns of such service to the justice before whom the objection shall be heard. Upon the hearing of the case, if said justice shall find that the person objected to is not a qualified voter, he shall, within three days prior to the election, transmit a certified list of the names of all such unqualified persons to the judges of election, and said judges shall strike such names from the registry list before the opening of the polls.

Granting that the issuance of this writ is within the jurisdictional powers of this court, it is the law that it can be directed to an officer to compel him to do a mere ministerial act which the relator has a right to have done by him, and as to which the officer has no discretion. But it must be to compel him to do a mere ministerial act, and this act must be one which by law he is required to perform and which he has refused to do.

Chief Justice TANEY in the case of *The State of Mississippi* v. *Johnson*, 4 Wall. 475, has given a clear definition of a ministerial duty. He says: "A ministerial duty, the performance of which may, in proper cases, be required, is one in which nothing is left to discretion. It is a simple, definite duty, arising under circumstances admitted or proved to exist and imposed by law."

Are the duties required of the assessor in relation to registering persons and preparing the registration lists, mere ministerial duties? If they are, and he has refused or neglected to perform them, he undoubtedly could be compelled by mandamus to perform them. Following the definition given to "a ministerial duty" as above quoted, these acts do not fall within it. To be ministerial, nothing is to be left to the discretion of the assessor. In the case at bar, one of the duties

imposed upon the assessor is to ascertain upon what grounds any and all persons claim to be voters, and he is furthermore required to make careful inquiry if any person whose name is on the list has died or removed from the precinct, or is otherwise disqualified as a voter. These are all duties which require investigation, research and opinion, discretion and consideration. He must form a judgment and act upon that judgment and it is incumbent upon him to exercise discretion in arriving at that judgment. He has the discretion upon the judgment formed by him from the inquiries he is required to make, to erase from the registration list of the preceding year any name that may be thereon. All these acts are not therefore mere ministerial duties, but are duties as to which the officer has a discretion, and are therefore not such duties which he can be compelled to do through the agency of the writ of mandamus.

It was insisted in argument by counsel for the relator, that the court has the power by mandamus to compel the respondent to perform an act not within the scope of his authority, if his refusal to do the act would work an injury.

This court cannot impose a duty on an officer which is not within the power imposed on him by law. "A mandamus will not be granted to command any person to exercise a jurisdiction which that person is not most clearly and certainly appointed to and bound by law to exercise; for the court will not grant such writ except it clearly see that there is a power lodged in the person against whom the mandamus is prayed."

In announcing this opinion on the question of the right of this court to issue the writ his honor Judge BOREMAN concurs with Judge HUNTER, though upon other grounds, as will appear from his opinion on file. Judge EMERSON does not agree with the majority of the court in this right, and hence dissents as to that branch of the opinion. Judge BOREMAN dissents from the majority of the court in its opinion refusing the writ, for the reasons stated in his opinion on file.

The demurrer is sustained.

EMERSON, J., concurred.

George R. Maxwell v. Robert T. Burton.

BOREMAN, J., delivered the following opinion:

As an original question, I have uniformly been of the opinion that the Supreme Court had no jurisdiction in such cases as this, except in aid of its appellate powers. I have considered that the Supreme Court had no distinctively original jurisdiction, except in cases of *habeas corpus*. The issuing of the mandamus as prayed is an exercise of original jurisdiction. In the late case of *Emeline Young and others* v. *George Q. Cannon et al.*, this court, after exhaustive argument, declared that it had jurisdiction to issue the writ of *certiorari*, which is an original writ of the same class as that of mandamus, and coming to us from the same source, the King's Bench, I assumed that that decision was to settle the practice, and that in this class of cases, to which both *certiorari* and mandamus belong, the Supreme Court would take jurisdiction. I think it our duty now to stand by that decision and not again unsettle the practice, as I deem would be done if the writ were now denied.

Upon the merits of the case I cannot agree with a majority of the court. I deem this to be a proper case in which to issue the writ. The legislature had no authority to allow anybody to vote who were not citizens or who had not declared their intentions to become such. It has never enacted that parties who had declared their intentions to become citizens might vote. Therefore, the registering officer is not authorized to allow anybody to vote who are not citizens. The statute granting suffrage to women allows them to vote without being citizens if they are " the wife, widow or the daughter of a native born or naturalized citizen." Such a provision is utterly void, in my opinion, and it is the duty of the registering officer to obey the law of Congress and not that of the Territory, when they conflict.

The act conferring the elective franchise upon women is unjust, as granting the franchise to women upon easier terms than upon males. Men are required to be taxpayers by the statute, but not so with women; the men are all required to

George R. Maxwell v. Robert T. Burton.

be residents, but not so the women, if they be the "wife, widow or daughter;" and all men who ask to vote must be citizens, or they will be rejected, but not so with all women. This matter of citizenship is important, when we consider that the bulk of the population of this Territory is of foreign birth, or children born in this Territory of foreign parents. The statute granting the elective franchise to women destroys the uniformity and impartiality which should exist in regard to the qualifications of voters, and the act which will do this is unjust and ought not to be upheld. I do not think that it will do to say that the requirement as to male voters, which is not found amongst the requirements of the female voters, will be nugatory. We have no right to conclude that this is so. The legislature has expressed itself to the contrary. It first passed the statute allowing males to vote, requiring them to be citizens, etc. It afterwards passed the statute granting the elective franchise to women, and subsequently it enacts the registration law, wherein it retains all the qualifications originally required as to male voters. It certainly, therefore, had no intention of repealing any part thereof. The two laws in regard to suffrage show great unfairness and lack of uniformity between the requirements of male voters and those of female voters, but as the legislature so intended, what authority have we to say that the one repeals the other? This certainly does not exist by implication, as they are statutes regarding different classes. The two laws are not inconsistent further than that one is unconstitutional, unjust and unfair to the body of voters mentioned in the first, and being so, should not be upheld. If the legislature had power to make one set of qualifications for one class of voters and another set for another class of voters, then the two laws can stand; but if the legislature has no such power, its attempt to do so is nugatory and void.

For these reasons, thus hastily stated, I am unable to agree with my associates in denying the writ in this case.