WILLIAM H. COMLEY, JR., STATE'S ATTORNEY, EX REL. GEORGE P. ROWELL *vs.* JOSEPH H. BOYLE ET ALS. (BUILDING COMMISSION OF CITY OF STAMFORD).

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued May 10th—decided August 2d, 1932.

*Clement A. Fuller* and *Joseph L. Melvin,* for the appellant (relator).

*Maurice J. Buckley,* for the appellees (respondents).

HAINES, J. The relator is the owner of an undivided one-half interest and a lessee of the other half, in an unoccupied rectangular tract of land in the city of Stamford, forty by fifty feet in size. This tract is situated in a section which is established by the building code of that city as a "fire district" or as "fire limits," and is also within a business zone as defined by the zoning regulations of the city.

Chapter X of the revised charter of the city creates a building commission of seven members, one being the building inspector of the city, three being the building committee of the common council and three composed of electors of the city, with the mayor as member ex

officio. Special Acts, 1915, pp. 564, 565. The building commission is given general power to supervise the erection, maintenance and use of buildings in the city and to issue permits for the construction of buildings. An appeal to the common council is provided, by any party claiming to be aggrieved by the action of the building commission and the charter states that "at said time and place the common council shall hear any such party or parties, and any member or members of said building commission, together with witnesses and counsel, in relation to said appeal, and is authorized to and shall confirm, modify, or set aside the action of said building commission from which such appeal was taken and may issue any permit so refused by said commission." § 140.

There are in effect in the city certain zoning regulations and a building code, which provides that it shall not be lawful to construct any building or structure until a permit to do so has been obtained, and that no permit shall be issued unless the proposed building complies with the laws and ordinances applicable thereto, the duly authorized regulations of the building commission, the zoning commission or the board of appeals.

Section 204 of the code, paragraph 5, provides, in part: "a. The building commission shall have power to vary or modify a provision of the building code or of an authorized regulation with respect to a particular building or structure, upon written application by the owner or lessee, or his duly authorized agent, where there are practical difficulties in the way of carrying out the strict letter of such provision, so that its spirit shall be observed and substantial justice done; but no variation or modification shall be granted or allowed unless the particulars of each application and of the

decision of the building commission thereon shall be entered upon the records of the commission."

Section 204, paragraph 6, provides: "All matters and questions relating to building or building operations necessary for safety but not covered or provided for in the building code shall be decided by and left to the discretion of the building commission, and their decision shall be final and binding as if contained in the building code."

The code classifies buildings and designates as one class "unprotected metal" structures, and buildings of this class may not be erected within the fire limits, which, by the terms of the code, include the business zones established by the zoning regulations.

The relator applied to the building commission April 6th, 1931, for a permit to erect on the above described tract "an all-metal or temporary structure to be used for the purpose of maintaining a fruit and vegetable market or other kindred purposes." This was concededly an "unprotected metal" structure within the definition of the code. In support of his application he claimed to the building commission that his proposed building was within the purview of § 204, paragraph 5, above quoted. At the same time he complained that the code, as applied to the situation presented by his application, was unconstitutional.

The type of building proposed at the location referred to, is not allowed by the building code, and the building commission refused to issue a permit for its construction. The relator then appealed to the common council, but at the hearing thereon objected to the participation in the hearing of the three members of the building commission, claiming they were disqualified by reason of having previously heard and acted upon the same matter as a building commission. The objection was overruled, and after the hearing the

common council, by a vote of six to three, "denied" the "petition" of the relator, who then brought this action of mandamus to the Superior Court. That court heard the various claims of the parties and dismissed the alternative writ. A study of the record shows that the entire proceeding finally resolved itself into two principal questions, viz.: whether the restrictions of the building code were constitutional and whether the building commission and the common council in the reasonable exercise of discretion should have modified or lifted the restrictions. The reason urged by the relator in supporting the affirmative of this latter question was, that there were "practical difficulties" in carrying out the restrictions, within the meaning of paragraph 5 of § 204, above quoted. The relator claimed that if he were not permitted to erect his building he would fail to obtain a considerable financial benefit which would otherwise accrue to him and insisted that this was a "practical difficulty" within the meaning of the code. The Superior Court found that these facts did not constitute "practical difficulties" within the true intent and meaning of the building code, and held that the respondents were bound by the ordinances as they stood and were justified in refusing the permit.

Of the forty assignments of error, twenty-two relate to the refusal of the court to find certain facts claimed by the relator. The truth of these allegations of fact is not denied but they were not found by the court on the ground that they were immaterial. Four of them purport to show the financial benefit which would accrue to the realtor by the granting of the permit, and eight recite the action taken upon other applications, claimed to be of a similar character. The remaining ten assignments recite details of the action by the common council at the hearing upon the appeal, the claim being that it disclosed improper motives of the common

council in holding the relator to the requirements of the building code.

If the inability of the owner of land to obtain financial profit from the erection of a building thereon, were to be considered a "practical difficulty" in applying the restrictions of a building code to that erection, then there are few cases indeed where practical difficulties could not be shown under most of the restrictive provisions of a building code. *Thayer* v. *Board of Appeals*, 114 Conn. 15, 22, 157 Atl. 273; *Norcross* v. *Board of Appeal*, 255 Mass. 177, 185, 150 N. E. 887, 890. The very fact that these are recognized as restrictions, indicates that property owners must submit to a limitation upon the use of their properties, but if these limitations are constitutional and apply reasonably and fairly to all, there can be no question of the right to impose them under the police power for the general welfare. *State* v. *Hillman*, 110 Conn. 92, 100, 147 Atl. 294, and cases there cited. Facts showing a financial benefit to the landowner by a removal of the restrictions, did not of themselves constitute "practical difficulties" in the sense in which that term is used in the ordinance, and no purpose would have been served by inserting in the finding claimed facts in relation thereto.

The request to include in the finding facts relative to other permits previously considered by the building commission, was rightly refused. The trial court properly regarded facts relating to the procedure of the common council as having no place in the finding. This is not an appeal from the doings of that body, but an independent proceeding for a mandamus.

The action of the building commission was that required by the building code, and the common council as a court of review could properly sustain that action. Even if the facts urged by the relator were held to be

"practical difficulties," these did not impose upon either the building commission or the common council the absolute duty of granting the permit. The action of both bodies is discretionary, and if the discretion be properly exercised, it cannot be disturbed or controlled by mandamus. *State ex rel. Berger* v. *Hurley,* 73 Conn. 536, 538, 48 Atl. 215. A writ of mandamus will not be issued to enforce the performance of a ministerial duty, unless (1) the party against whom the writ is sought be under an obligation imposed by law to perform some such duty, that is, a duty in respect to the performance of which he may not exercise any discretion; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other sufficient remedy. *Bassett* v. *Atwater,* 65 Conn. 355, 360, 32 Atl. 937; *State ex rel. Foote* v. *Bartholomew,* 108 Conn. 246, 249, 142 Atl. 800; *State* v. *Erickson,* 104 Conn. 542, 545, 133 Atl. 683; *State ex rel. Metropolitan Life Ins. Co.* v. *Upson,* 79 Conn. 154, 163, 64 Atl. 2.

This is an application for a peremptory writ of mandamus requiring the building commission to modify the restrictions of the building code and grant the relator a permit for the erection of his building which does not conform to the requirements of the code. Before such mandate may be issued by the court, it must appear that the relator has a clear legal right to the permit and that there has been a violation of a legal duty which rested upon the building commission or the common council to issue such a permit.

Both propositions are controverted by the facts established. The proposed building violates the restrictions of the code, which restrictions can only be modified by the existence of "practical difficulties" and these are not found to exist. Moreover, even if such practical difficulties were shown, the duty to issue a permit

not being an absolute one but resting in the reasonable exercise of discretion on the part of the building commission and the common council, it conclusively appears that there is here no established legal right nor violation of legal duty, both necessary prerequisites in mandamus. It is clear that if the writ were issued, the building commission and the common council would be commanded and required to do an act which on the face of this record they are under no legal obligation to do. *State ex rel. Shelton* v. *Edwards,* 109 Conn. 249, 254, 146 Atl. 382, and cases cited.

The relator was not entitled upon the grounds above discussed, to a mandamus to compel the modification of the restrictions of the building code and the issuance to him of a permit thereunder.

However, the prayer for the writ is also based upon a second ground advanced in the trial court, viz.: that he was entitled to the writ to compel the issuance of a permit for the erection of his building, since the right to so build was an inherent right, and the portion of the code referred to was unconstitutional and therefore did not deprive him of this right.

The question is thus presented whether in this application for a writ of mandamus, the constitutionality of the ordinance should be determined by the court, and the right to the writ made dependent upon whether the ordinance is or is not constitutional. Upon this question the authorities are not in accord, but the trial court held that the constitutionality of the ordinance would not be determined in this proceeding.

The precise question has not been passed upon in this jurisdiction, but we have cited with approval the generally recognized rule that the writ will not issue except where the relator has a clear legal right to the writ at the time his application therefor is made. Thus, where the title to an office was in dispute, we held,

contrary to the doctrine in Massachusetts as stated in the case of *Welch* v. *Swasey,* 193 Mass. 364, 79 N. E. 745, that mandamus would not lie until the title to the office had been determined in an appropriate action brought for that purpose. *State ex rel. Comstock* v. *Hempstead,* 83 Conn. 554, 559, 561, 78 Atl. 442. We said in that case that "we have kept the remedies by mandamus and quo warranto distinct from each other, and confined the remedy of mandamus within its original and well established limits under the common law; *Duane* v. *McDonald,* 41 Conn. 517; and in that case we definitely adopted the English rule in preference to the Massachusetts rule which permits title to be tried by mandamus to restore one to an office." We added: "Mandamus neither gives nor defines rights which one does not already have. . . . It acts at the instance of one having a complete and immediate legal right; it cannot and does not act upon a doubtful or a contested right, hence it cannot adjudicate a title, nor settle conflicting claims to an office. It is an expeditious remedy called into action to protect an undoubted legal right."

In *State ex rel. Shelton* v. *Edwards,* 109 Conn. 249, 253, 146 Atl. 382, we said that this was a prerogative writ, not demandable as matter of strict right, was subject to the sound legal discretion of the court and lies only where the relator has a clear legal right and where the matter is substantial. To the same effect is *Chesebro* v. *Babcock,* 59 Conn. 213, 218, 22 Atl. 145.

In the present case the relator asks that, even if under the ordinance he has no legal right to the permit which he seeks, the court pass upon the constitutionality of the provision of the ordinance which denies this right in order to determine whether or not he has a right to the permit notwithstanding this provision. Manifestly he does not come into the court in the first

instance asking the enforcement of an established right which he then has. He has a means of determining his right by other appropriate proceedings. There is a dispute between him and the city officials as to whether he has a right to a permit to erect his building. It has been held by many courts that where there is such a dispute, mandamus will not lie. *State ex rel. Comstock* v. *Hempstead,* 83 Conn. 554, 78 Atl. 442; *Ex parte Hussein* v. *Lutfi Bey,* 256 U. S. 616, 41 Sup. Ct. 609; *Inglin* v. *Snider,* 163 Cal. 747, 127 Pac. 60; *People ex rel. McMackin* v. *New York Board of Police,* 107 N. Y. 235, 13 N. E. 920; *Brooklyn Improvement Co.* v. *Pounds,* 174 App. Div. 448, 161 N. Y. Sup. 585.

A case in Indiana presents conditions closely parallel to those in the present case. The relator had applied for a writ of mandamus against the building inspector of the city of Indianapolis to compel him to approve certain plans for an apartment house which the relator wished to erect upon his own land. The plans were in conflict with a statute relating to the erection of apartment houses, and in his application the relator alleged that this statute was unconstitutional. The court held that the writ should be denied, holding that it was not a matter of right, but was a prerogative writ, its issuance resting, in a sense, in the discretion of the court, and that it can only be had where there is no other adequate remedy, since the relator must show a clear existing legal right to the thing demanded. That court referred to the unwillingness of courts generally to extend the operation of the writ beyond the narrow limits of its sphere, and added that it will be denied when the object of the application is to obtain an adjudication upon some question which may as well be settled in a different and appropriate action. "In other words this form of proceed-

ing cannot be employed to adjudicate and establish a right or define and impose a duty, but only to enforce a legal right and the performance of a duty specifically enjoined. The relator is not asserting a clear legal right but merely a claim of right which he is seeking to have the courts in this action establish by striking down a legislative enactment prohibiting the thing which he desires. . . . It was not the province of the appellee as building inspector to pass upon the constitutional validity of the statute, but his duty was unquestionably to obey its mandate;" and the court added that if the respondents were under a duty it was one which must be first ascertained by the court and should therefore be litigated in an appropriate action between the adversary parties. It was held, and we think upon sound reasoning and established principles, that the court was not required to pass upon the constitutionality of the statute in the mandamus action. *State ex rel. Hunter* v. *Winterrowd,* 174 Ind. 592, 595, 597, 91 N. E. 956; *Sharpless* v. *Buckles,* 65 Kan. 838, 70 Pac. 886. The rule was established very early in some jurisdictions, of which the following are illustrative. *Wright* v. *Kelley,* 4 Idaho, 624, 43 Pac. 565; *People ex rel. Bradley* v. *Stephens,* 2 Abb. Prac. (N. S.) [N. Y.] 348; *Ex parte Lynch,* 16 S. C. 32, 40; *State ex rel. Port Royal Mining Co.* v. *Hagood,* 30 S. C. 519, 9 S. E. 686; *Maxwell* v. *Burton,* 2 Utah, 595. In other jurisdictions the refusal to pass upon the preliminary question of constitutionality was based upon the admitted discretion of the court in cases of mandamus. *Ramagnano* v. *Crook,* 88 Ala. 450, 7 So. 247; *People ex rel. Hall* v. *San Francisco,* 20 Cal. 591; *Summerson* v. *Schilling,* 94 Md. 591, 51 Atl. 612; *United States ex rel. Siegel* v. *Board of Liquidation,* 74 Fed. 489; *State ex rel. Columbus* v. *Mitchell,* 31 Ohio St. 592. In the *Winterrowd* case the court concluded its

decision as follows: "It seems to us a manifest hardship to impose upon a petty ministerial officer the burden of determining, at his peril, and defending the validity of a law which he is required and willing to obey. . . . We conclude, therefore, that the relator in this proceeding cannot require the court to pass upon the constitutionality of the act called in question."

As we have indicated, there are many authorities which hold a contrary view, and in some cases courts have determined the constitutionality of a law where there has been no question raised as to its action, and the relator's brief calls attention to that of *Welch* v. *Swasey*, 193 Mass. 364, 377, 79 N. E. 745. It is true that under the circumstances of that case the court did pass upon the question of constitutionality as a preliminary to the issuance of the writ of mandamus. However, the closing paragraph of the decision reads: "In cases where the duty of performing an act depends solely on the question whether a statute or ordinance is constiutional and valid, the question may *sometimes* be determined on a petition for a writ of mandamus."

We hold that the reasoning and conclusion well stated in the *Winterrowd* case, reflect the policy of this State also, to confine the writ of mandamus to its long-established function of compelling performance of clear legal rights, and in this respect, as we said in *State ex rel. Comstock* v. *Hempstead, supra,* we have definitely adopted the English in preference to the Massachusetts rule upon this question. Whether the conclusion be based upon the valid exercise of discretion by the trial court or upon the broader ground that it was not the province of that court to pass upon the question, we hold that the trial court rightly refused to pass upon

the question of constitutionality of the ordinance of the city of Stamford.

There is no error.

In this opinion the other judges concurred.