STATE, EX REL. J. WALTER MADIGAN, ET ALS.

vs.

COUNTY COMMISSIONERS OF THE COUNTY OF FAIRFIELD, ET ALS.

Superior Court      Fairfield County      File #55074

124 Conn. 611      MEMORANDUM FILED MAY 7, 1938.

Kenealy & Ryan, of Stamford, for the Plaintiffs.

Bernard A. Nevas, of South Norwalk; Harry Schwartz, of Bridgeport, for the Defendants.

CORNELL, J. The alternative writ was issued upon the relation of divers residents and taxpayers of the towns of

Stamford, Greenwich and New Canaan, most, if not all of whom are members of the Bar practicing their profession in Stamford or its immediate environs. Among the acts which the County Commissioners are required to do (or show cause to the contrary) is that they "complete the purchase of the building known as the Masonic Temple at Stamford." Another, which must be performed jointly with the County Treasurer, is that they "issue bonds not exceeding $95,000 for such purpose, as authorized and required by law."

It appears that for some time past there has been agitation among practicing members of the Bar at the southwesterly area of Fairfield County to have the Superior Court hold sessions at Stamford. To accomplish this, two conditions were required to be brought into co-existence, viz., (1) special statutory authority to the court, permitting it to do so, and (2) the furnishing of a place with proper facilities for the purpose. The county commissioners shall provide "suitable quarters . . . for holding the superior court and court of common pleas in their respective counties where there is no suitable place therefor, and the expense thereof, except where it is otherwise provided by law, shall be paid by the county." (Gen. Stat. [1930] §5425.) The first essential was satisfied by section 825d of the Supplement to the General Statutes (1937), approved May 11, 1937, and effective July 1, 1937, which permits, but does not command, the holding of Superior Court sessions at Stamford; the second can only be met, if some public or even private agency sees fit to furnish "quarters" for the use of the court, "without expense to the county." (Supp. [1937] §825d.) No such facilities have, to date, been offered by the City of Stamford or any other body, so far as appears.

On June 11, 1937, "An Act Authorizing Fairfield County to Issue Bonds" was approved (Connecticut Special Laws, 1937, p. 818). This (aside from provisions contained therein of no present materiality) authorized the issuance of bonds "for the purpose of defraying the expenses and indebtedness incurred by Fairfield county in acquiring land and buildings thereon situated in Stamford for a county building and court house." (Section 2.) It, obviously, looked toward the acquisition of a county building in Stamford in which space and facilities for sittings of the Superior Court would be provided. The Act in question limited the amount of such bonds to

$95,000 and authorized the Senators and Representatives of Fairfield county at any regular or special meeting to "issue" them. Out of an apparent intention to exercise the powers thus conferred, the Senators and Representatives met on August 2, 1937 and adopted the following resolutions:

"RESOLVED: That the Report of the Sub-Committee appointed by the County Meeting, held at Hartford, Connecticut, on June 2nd, 1937, recommending the purchasing, alteration and furnishing the building known as the Masonic Temple, at Stamford, at a cost not to exceed $132,500, (the cost of said land and building not to exceed $90,000) be adopted, and that the county Commissioners be authorized to provide for the financing of the same by bond issue not exceeding $95,000, as authorized under the laws of the State of Connecticut, and by a tax to be levied to provide the balance of said sum, said tax to be payable on Oct. 1st, 1937."

Likewise, a tax was laid upon the inhabitants of the county and apportioned among the several towns to supply the balance of the funds over and above the proceeds of the sale of the bonds (viz., $37,500) required to pay for the necessary alterations and equipment. Some of the towns have paid this, others, claiming that it is illegal, have failed and continue to refuse to do so. It is evident that by these proceedings, the meeting of the Senators and Representatives sought not only to supply the money wherewith to provide a county building at Stamford with "quarters" for the Superior Court but, also, insofar as in its power lay, to further the purchase of the Masonic Temple (now owned by a bank) for the purpose. In fact, the total amount of the bonds authorized to be issued and sold is the exact equivalent of the price at which the owner of that building offered to sell it to the county in a letter to the County Commissioners on February 5, 1937.

It must, of course, be conceded that the writ will not lie unless the respondents are under a duty imposed by law to do the acts which it is sought to compel them to perform. Comley, State's Attorney, ex rel. Rowell vs. Boyle, 115 Conn. 406, 412, and cases cited in the opinion. As concerns the demand that the County Commissioners be required "to complete the purchase of the building" in question, there is no allegation in the alternative writ to the effect that they ever accepted the offer of the owner of that property to sell it to the county and none that they by any official action determ-

ined that it should be acquired. The relators, apparently, contend that a duty to purchase the property arose out of the action of the General Assembly in its adoption of the special act referred to, supra, authorizing the Senators and Representatives of the county to issue bonds, and the adoption of the resolution at the meeting of the Senators and Representatives "issuing" them, on August 2, 1937.

Palpably, the special act in question had for its purpose only the providing of a means of financing the purchase of land and buildings in Stamford for a county building and court house when and if the county should determine to acquire it through its legally constituted agency.

The body to which is delegated the authority of determining whether a public necessity exists for a county building at Stamford is the respondents, County Commissioners (Gen. Stat. [1930] §5065, and see, *State vs. McCook*, 109 Conn. 621, 628, 632). To it is, also, committed the power to purchase the same, "in the name and behalf of the county" (Gen. Stat. [1930] §201). Whenever there is occasion for taking land by the county "for a site for, or addition to the site of any county building," by condemnation, the proceedings outlined in section 5072 of the General Statutes, Revision of 1930, must be brought by the County Commissioners "in the name of the county." The management, care and sale of all property belonging to the county resides with the County Commissioners. (Gen. Stat. [1930] §201.) Under these statutes, clearly, the County Commissioners—not the Senators and Representatives—constitute the authority which is to decide (1) whether the public necessity requires a county building at Stamford, and if so (2) whether to acquire the Masonic Temple building to satisfy the need, and if these matters are decided affirmatively, then (3) whether to do so by purchase or condemnation.

Nothing in the special act referred to purports to divest the respondent County Commissioners of any of their rights, powers and duties as outlined supra with respect to the particular matter of whether a county building should be established at Stamford.

On the contrary, the lack of any such intimation identifies the purpose of the act as in conformity with the role assigned to the Senators and Representatives as respects the financing of county activities only. This is detailed, in the main, in

sections 202, 212 and 215 of the General Statutes, Revision of 1930 (and see, Supp. 1937, §100d). In brief, it consists in laying taxes for the ordinary expenditures involved in the conduct of county affairs; of levying special taxes and apportioning the same among the several towns to provide funds for any special purpose not provided for at the biennial meeting which the County Commissioners deem necessary, and to authorize the County Commissioners to borrow money and with the Treasurer to issue negotiable notes of the county in that connection. The status of the County Commissioners as respects the acquisition of real property for county purposes in relation to the county's Senators and Representatives convened in meeting is not unlike that which the legislative bodies or special boards of municipalities exercising complete control over particular public activities bear to a board of finance. See *Keller vs. Bridgeport,* 101 Conn. 669, 680, where it said, in effect, that when specific power to acquire property is delegated to a body, the financial authority cannot throttle its activities by refusing or failing to appropriate the funds wherewith to finance it. Neither, of course, can they interfere with the functioning of such bodies in determining whether and what land to acquire in the exercise of functions exclusively committed to them. The special act approved May 11, 1937, supra, merely confers upon the Senators and Representatives an additional power for the particular purpose of financing the purchase of any county building at Stamford, in addition to those which already resided in them, viz., to authorize the issuance of bonds. The context of the resolution adopted at the meeting of the Senators and Representatives on August 2, 1937 contains no hint of a design on the part of the Senators and Representatives to order the County Commissioners to purchase the Masonic Temple building or any building at Stamford, nor does it even make any such recommendation to the County Commissioners. If it purported to do so such action would be ultra vires. It evinces only an intention to exercise the authority conferred upon it by the special act approved May 11, 1937, which authority, as noted supra, was to enable it to issue bonds to finance the project in question, if and when the County Commissioners determined to buy or condemn the property in question.

It thus appears, that neither by the special act of the General Assembly nor by the resolution of the Senators and Representatives, authorizing the issuance of bonds pursuant

to that act, was any legal duty imposed upon the County Commissioners "to complete the purchase of the building" in question or to acquire any site or other structure at Stamford for a building for use for any county purpose or to furnish "quarters" for sessions of the Superior Court at Stamford. Since it is the supposed existence of such a duty emanating from the sources mentioned upon which the relators rely (and no other), it follows that there is no occasion for the issuance of a peremptory writ since, of course, the court cannot order the performance of a duty by the County Commissioners, which does not exist.

This conclusion is decisive, also, of the demand that the County Commissioners and the County Treasurer cause the bonds authorized by the Senators and Representatives to be issued and sold. The special act specifically provides:

> "Section 3. The county commissioners and the treas-urer of Fairfield county shall determine the date of such bonds, the date on which the interest thereon shall be payable, the form thereof and the place of payment of the principal and interest and shall issue such bonds at such time or times and in such amounts as they shall deem necessary, and shall provide for the sale thereof."

Patently, this was intended to protect the County from the necessity of paying interest charges on outstanding bonds prematurely issued, i.e., before the funds provided by their sale are required to be used. Insofar as the record here discloses, there is presently no need for such funds nor none in the immediate future. The time for the issuance and sale of the bonds is left by the Act to the discretion of the County Commissioners. In the present status, the court, obviously, would be without warrant in interfering with the exercise of that discretion.

The considerations mentioned supra are decisive of the other alleged duties which the alternative writ would require the respondents to perform and need no discussion. The court has examined the eighteen defenses which appear in the return of the City of Bridgeport and the others in the return filed by the respondents. Except as matter contained in them may be involved in what is written supra, they raise questions which under the views expressed herein are academic only.

The issues are found for the respondents. The issuance of a peremptory writ is denied.