## HUGH M. ALCORN, STATE'S ATTORNEY, EX REL. PATRICK KIRBY

*vs.*

## BOARD OF FIRE COMMISSIONERS

Superior Court          Hartford County          File No. 65481

MEMORANDUM FILED FEBRUARY 20, 1942.

*Joseph B. Griffin,* of Hartford, for the Plaintiff.

*Vincent W. Dennis,* Corporation Counsel, and *Harold Borden,* Assistant Corporation Counsel, of Hartford, for the Defendant.

QUINLAN, J.   The Firemen's Relief Fund of the City of Hartford was established in 1897 by a special act of the Legislature.   It first provided that one of the classes entitled to relief should have had "twenty years of meritorious service."   (Special Laws of 1897, No. 365.)   Later this was changed to "thirty years of continuous, meritorious service." (Special Laws of 1921, No. 170.)   This was reduced to 25 years by Special Law No. 208 of the Special Laws of 1939. By Special Law No. 438 of the Special Laws of 1933, the word "meritorious" was dropped as an essential and finally by Special Law No. 208 of the Special Laws of 1939, the words, "continuous, permanent" were eliminated.

The law now reads (Special Laws of 1939, No. 208): "The board of fire commissioners *shall* permanently retire any member of the fire department, *upon the written request of such member, when such member has performed twenty-five years of service in the department.*"   (Italics added.)

The applicant at the time of his written application for retirement, January 8, 1941, had served 33 years, or eight years beyond the time fixed by the law.   Had he made his application any time after the expiration of 25 years he would have been entitled to the benefits of the law.

While it is true that pension statutes are to be liberally construed, *State ex rel. Holton vs. City of Tampa,* 119 Fla. 556, 559, 159 So. 292, 293, 98 A.L.R. 501, 504, nevertheless "a writ of mandamus will not be issued to enforce the performance of a ministerial duty, unless (1) the party against whom the writ is sought be under an obligation imposed by law to perform some such duty, that is, a duty in respect to the performance of which he may not exercise any discretion; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other sufficient remedy."   *Comley, State's Attorney, ex rel. Rowell vs. Boyle,* 115 Conn. 406, 412.

At the time the applicant filed his application for retirement he was still a member of the fire department although under suspension.   43 *C.J. Municipal Corporations* §1496; *People ex rel. Tuck vs. French,* 108 N.Y. 105, 15 N.E. 188.

At that time also he had completed the necessary number

of years for retirement. He had paid his assessments. The law does not require "meritorious" or "honorable" service. He had not been convicted of a felony. Indeed, one of the decisions, *Daly vs. Otis,* 92 Cal. App. 242, 267 Pac. 921, contained the express proviso that removal for any other cause than "conviction of a felony, notorious or consecutive insubordination or neglect of duty" would not cause the forfeit of a pension. In that case the applicant was charged with absence without leave and judgment was reversed in his favor. And in two other cases, as one of the courts said: "For aught that appears, the punishment of dismissal was inflicted for innocent misfortune, not conscious misdoing." *People ex rel. Langdon vs. Waldo,* 158 App. Div. 936, 143 N.Y.S. 818, quoted in *In re Gifford,* 192 Wash. 562, 568, 74 P. (2d) 475, 478, 114 A.L.R. 348, 352.

Nowhere in the Special Law affecting this situation is the word "pension" used and perhaps it should be distinguished as an annuity. As McQuillin says (*McQuillin, Municipal Corporations,* Rev. vol. 2 [1939] §529, p. 274): "It can well be understood that the origin of the sum from which the payments are made may determine the rights of the employee in many circumstances, and a great deal of the apparent conflict in the opinions disappears when considered in the light of such distinction." Nevertheless, "by the great weight of authority the fact that a pensioner has made such compulsory contribution does not give him a vested right in the pension" (Anno. 54 A.L.R. 945), although Mr. Justice Field in *Pennie vs. Reis,* 132 U.S. 464, at page 471, did say that "until the particular event should happen upon which the money or a part of it was to be paid, there was no vested right in the officer to such payment." Here there is no requirement of a *resolution* to be passed as in *People ex rel. Brady vs. Martin,* 145 N.Y. 253, 39 N.E. 960.

The foregoing has to do with some of the general principles pertaining to situations like the one at hand, as well as some brief reference to the history of the applicable special law and amendments thereto, concerning the relief fund.

An examination of the latter discloses that section six has been carried as a section devoted to retirement upon the written application of a member. Before considering the various amendments to this section, section five should receive some attention. That section reposes certain discretionary powers

in the board of trustees of the fund and the fire commissioners. It sets up three classes to whom there *may* be appropriated money from the fund. The "third" class is the only one that bears any resemblance to that mentioned in section six under which the applicant is moving, and bears no resemblance to the latter class as that section was amended in 1939 (Special Laws of 1939, No. 208). As the law stood in 1933 it could be distinguished by the difference in retirement compensation, to wit: the third class in section five of the Act, as amended, is to receive "*one-half* the yearly compensation received by such member at the time of retirement," whereas section six pro-vided then and provides now, that the compensation, is "*not to exceed one-half* the yearly compensation received by such member at the time of retirement." (Italics added.) It would appear that a distinction was made between a member who had been retired by the board after 25 years and one who on his own application sought retirement. The former has had provided a fixed sum of relief, while the latter must be retired, but his compensation *may not exceed* one-half of his yearly compensation at the time of retirement. In other words, if a man chooses to retire he subjects himself to a fixing of his compensation whereas if he is retired involuntarily he receives a certain amount. Moreover, in addition to the classes provided in section five, section seven of the Act makes provision for those who may be *killed* in the performance of duty, and for those whose "service shall include one or more years of continuous, permanent service" and "shall have *died* from sickness contracted or injuries received *while not* in the actual performance of duties." (Italics added.) So that sec-tion five does not classify all the classes, nor benefits provided in the Act. Again, section six, as last amended in 1939 merely requires 25 years of service, whereas the "third" class men-tioned in section five provides for "continuous, permanent service." Indeed section six, as last amended in 1939, creates another class of beneficiaries, viz., those who have reached the age of 65 or over, who are to be retired by the commissioners. It is true that section six provides for the disposition of the yearly compensation of a retired member who dies and no doubt covers the "third" class mentioned in section five, as well as the voluntary and involuntary retirement class in section six, but it is significant that the words used to cover the compensation, fix such compensation, whether the retire-ment is voluntary or involuntary, so as to do no violence to

the construction I have adopted by providing that the widow, while unmarried, shall receive not more than one-half of the yearly compensation *received* by such retired member *at the time* of his death.

In this state of the law no discretion resides in the commissioners as to the retirement itself of this plaintiff although the applicant is subject to a payment (fixed reasonably and not arbitrarily) of not exceeding one-half of his yearly compensation.

This conclusion is reached not merely by a construction of the special laws pertaining to firemen's relief in Hartford but upon the law as it has been judicially construed in New York.

At the time of the decision of two of the leading cases of the country and particularly of New York State, namely, *People ex rel. Tuck vs. French*, 108 N.Y. 105, 15 N.E. 188, and *People ex rel. Brady vs. Martin*, 145 N.Y. 253, 39 N.E. 960, the law was such that the retirement was to be accomplished "by resolution adopted by a majority vote of the full board." In the later case of *People ex rel. Fitzpatrick vs. Greene*, 181 N.Y. 308, 73 N.E. 1111, with a court consisting of Cullen, Ch. J., and Bartlett, Vann, Werner and O'Brien, JJ., these two cases were considered as having no application because the resolution to be adopted by a majority of the board was not required in the then existing charter, but there was a proviso that there should be no charges pending against the applicant at the time of his request for the retirement and the sole question was whether there was a charge pending against him. In the latter case the court said: "It will be seen, also, that this statute executes itself, in the sense that when the necessary facts exist the retirement is accomplished by the policeman's application in writing. In other words, when the necessary conditions actually exist the retirement is accomplished by the policeman's application, without any action upon the part of any other body."

If, as was said in *Fitzpatrick vs. Greene, supra,* and as above suggested, "that the statute is entitled to a reasonable construction", and the length of service is not in dispute and the application was made and the plaintiff although suspended was not thereby removed from the department, and the history of the legislation shows the dropping of the words "continuous, permanent" service and imposes no restriction concerning pend-

ing charges, or a requirement of meritorious or honorable service, then he should not be deprived of the benefits of the law. The return is found to be untrue and judgment may enter for the plaintiff with costs.