STATE EX REL. BOARD OF EDUCATION OF THE CITY OF
BRIDGEPORT v. ADOLPH D'AULISA, COMPTROLLER OF
THE CITY OF BRIDGEPORT

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No.72678

Memorandum filed July 13, 1946.

*David R. Lessler,* of Bridgeport, for the Plaintiff.

*Harry Schwartz,* of Bridgeport, for the Defendant.

ALCORN, J. The board of education of the city of Bridge-port, hereinafter referred to as the relator, brings this action on the relation of the state's attorney for Fairfield County to compel the comptroller of the city, hereinafter referred to as the respondent, to certify for payment certain teachers' and superintendents' payroll items. Three teachers, two superintendents, and an assistant superintendent are named in the petition as joint plaintiffs. The court issued an alternative writ to which the respondent has filed a return denying all allegations and then affirmatively alleging in substance that the disputed items are continuing semimonthly payments which if aggregated for the fiscal year would exceed the total appropriation levied for the purpose and for that reason the respondent cannot certify the sufficiency of the appropriation.

The factual circumstances established at the trial disclose that the respondent at the time the action was brought was officially the assistant comptroller of the city but had been designated as acting comptroller by the comptroller who was on leave of absence in anticipation of his retirement, which occurred on May 1, 1946. Since the latter date the respondent has been the comptroller.

In December, 1945, the relator submitted to the respondent its budget estimate for all school purposes for the fiscal year beginning April 1, 1946, and ending March 31, 1947, in the total sum of $2,748,994. Thereupon the respondent recommended to the city's board of apportionment and taxation a

total appropriation for the relator of $2,564,462. Acting upon this request and recommendation, the board of apportionment and taxation made an appropriation to the relator for the fiscal year in the total sum of $2,588,414. This procedure was in accordance with § 95 of the charter of the city of Bridgeport, Revision 1939. See also § 275c, Cumulative Supplement to the General Statutes, 1935.

Included in the budget requested and recommended and in the appropriation as made was an item for "Miscellaneous Library Operation" which is not a board of education item and for which an appropriation of $210,270 was made. To arrive at the total appropriation actually to be expended by the relator, therefore, this item should be deducted, leaving a total appropriation of $2,378,144.

Included in the total appropriation is an item entitled "Reg. Teachers and Supervisors' Salaries $1,837,995." Other salary items in the appropriation were as follows: Under the heading "Business Office," $32,610; "Principals' Clerks' Salaries," $20,500; "Operation," $183,000; "Evening Schools," $33,100. The remaining items of the total appropriation are for purposes other than salaries of any sort.

In a distinct item of the city budget, entirely apart from the appropriation of the relator, the board of apportionment and taxation appropriated a sum for the benefit of city employees entitled "Reserve for Employees' Bonus Payts. as Defined by Civil Service Comm.," designed as a cost-of-living bonus. In computing the amount of this appropriation there was, however, taken into consideration the sum of $187,922 for the benefit of school teachers in the event that the relator should take the necessary steps to have them participate in the benefits of the fund. The relator, however, has taken no action in order to have the teachers share in this fund.

The teachers and superintendent of evening schools are paid on an annual salary basis divided into substantially equal semimonthly payments over a period of ten months. The superintendent of schools and the assistant superintendent of schools are paid on an annual salary basis divided into substantially equal semimonthly payments over a twelve-month period. The customary procedure preliminary to each payment is for the comptroller's office to prepare a payroll sheet setting forth the impending payments. The comptroller's office sends this sheet

to the board of education which examines it and returns it to the comptroller with an indorsement of its approval and accompanied by a certification to the comptroller that the board has audited and approved the bills. The payroll sheet does not identify the individual payees but, instead, groups the payments according to schools or other classification. Both the payroll sheet and the certification by the board of education designate by symbol the particular item of appropriation against which a given payroll is charged.

On the first payment period under the current appropriation, in mid-April, 1946, the relator, following the established procedure, audited and approved payrolls for teachers and other employees, and other bills for the support and maintenance of the schools, for the first payment period. These were transmitted to the respondent for certification under the city charter, the pertinent part of which provides as follows:

"Said board shall audit and approve, semi-monthly, all bills for the ordinary current expenses of its department, and report the same to the comptroller who shall thereupon certify whether or not the appropriation is sufficient for the payment thereof, and if sufficient he shall so certify to the city treasurer, and thereupon the same shall become due and payable." Section 155, charter of the city of Bridgeport, Revision 1939.

The respondent thereupon notified the relator, by letter, in substance that he could not certify the teachers' payroll, except for substitute and evening school teachers, and could not certify the items for salaries of the superintendent and the assistant superintendent of schools and the superintendent of evening schools, because when the payments approved for them were totalled and calculated for the entire fiscal year the payment would exceed the appropriation for the purpose. In arriving at this decision the respondent did not consider any item of the relator's appropriation except the ones against which the questioned payments were allocated on the payroll sheet and the relator's accompanying certification. The teachers' salaries are charged against the appropriation of $1,837,995 designated as "Reg. Teachers and Supervisors' Salaries." The salary of the superintendent of evening schools is charged against the appropriation for salaries and wages under "Evening Schools" and the superintendent and assistant superintendent of schools is charged against the appropriation for salaries and wages

under the "Business Office." To arrive at his decision the respondent calculated that the gross salary requirement at the rate indicated by the approved payments would, by the end of the fiscal year, amount to $2,088,964.

Based upon his twelve years experience as an assistant comptroller and his knowledge of the relator's needs over the years, he deducted from that figure $20,000 to allow for adjustments due to turnover of personnel, leaving a net requirement of $2,068,964. In his entire experience the only instance of the relator transferring one item of appropriation to another under its statutory authority (see § 275c, Cumulative Supplement, 1935) was a transfer during the fiscal year 1945-46 of $2500 unused in the salary appropriation and transferred to the purchase of land. He did not take into account the general appropriation for the benefit of city employees because the board of education had taken no steps to make it available to teachers.

Setting the net salary requirement for teachers against the appropriation item for teachers' salaries disclosed, in the respondent's judgment, a prospective deficit for the year of $230,969. Further calculations indicated an added deficit of about $1400 for the three superintendents, making a total deficit for all salaries in question for the year of $232,369. At the time of refusing to certify, under the statute, the relator's total appropriation was on hand.

Upon these facts the single claim presented to the court by the relator is that so long as there are any funds available in its appropriation sufficient to meet its requested payments, the respondent must certify the approved bills for payment to the treasurer. The respondent, on the other hand, contends that if the periodic salary payment requested would, when repeated throughout the fiscal year, exceed the salary appropriation to which it is allocated, he cannot certify that the appropriation is sufficient for the payment. The relator's position is predicated upon the argument that it has complete and absolute superintendence of all matters affecting the schools without being subject to the dictate of any other official. Upon this premise it argues that any expenditure for a proper school purpose must be certified by the comptroller if funds to meet it are then available anywhere in its total appropriation leaving to the board, under the statute, § 275c, Cumulative Supplement, 1935, the problem of making any necessary transfers from one item to another to meet the specific purpose. It is undoubtedly true

that as an agency of the state the board of education has broad powers in the superintendence of school affairs. Section 237h, General Statutes, Sup. 1945; § 142f, Sup. 1941; *Board of Education of Stamford* v. *Board of Finance,* 127 Conn. 345, 349. *New Haven* v. *Torrington,* 132 Conn. 194, 202. The relator's argument, however, overlooks the essential fact that in defining its powers the General Assembly has seen fit to define specifically the procedure to be followed with respect to the payment of its bills and has given the respondent a definite function in connection therewith. Section 155, charter, city of Bridgeport, Revision 1939, above quoted. This action is not designed to require or necessitate any decision as to the relative powers and functions of the relator and respondent. The sole question for decision is whether the action required of the respondent under the facts of the case is of such a nautre as to be subject to a prerogative writ of mandamus.

Because of the equitable nature of mandamus the court has been at some pains to examine the record to determine whether the relator's request arises from any critical need in the operation of the schools or whether the action of the respondent amounts to an interference by him in the orderly administration of the school system by a duly constituted authority. See *Cummings* v. *Looney,* 89 Conn. 557; State ex rel. *Stamford* v. *Board of Purchase and Supplies,* 111 Conn. 147. There is nothing in the record to show that either situation exists. There is no evidence of the nature of the contracts between the relator and its teachers and superintendents; no evidence of the basis or scale of their salaries; no evidence that the appropriation made was not adequate to meet the obligation of their contracts; and no evidence that they have made any demand of the relator for any increased compensation or salary adjustment since the appropriation was adopted. See *Groton & Stonington Traction Co.* v. *Groton,* 115 Conn. 151. In fact, it affirmatively appears that the relator's requested appropriation for regular teachers' and supervisors' salaries was only $35,677 more than the appropriation actually granted. Presumably the requested appropriation took into account the contract obligations with the teachers involved. From what source then arises the deficit of $232,369 which the evidence discloses would exist at the end of the year if the salaries were paid at the rate requested? The conclusion is inescapable that the relator has made a substantial increase in the salaries for teachers over its original contract requirements. What that increase is, the

reason for it, and whether it has any basis in law, nowhere appears. For aught that appears the increase may have been a mere gratuity. That it was occasioned to meet rising living costs tends to be negated by the fact that the relator has not seen fit to adopt for its teachers the bonus provided for city employees to meet that circumstance.

All that confronts the court and, from the record, all that confronted the respondent, is that an appropriation was made to the relator to meet the running expenses of the schools and that on the first payment date of the fiscal year the relator requested the payment of certain salaries at a rate considerably in excess of those provided for in the appropriation. The decision must rest upon the narrow issue which the relator has seen fit to present. In reaching its decision the court must refuse to accept the brief filed by the respondent. At the close of the trial simultaneous briefs were ordered on May 25, 1946. No extension of time for filing was requested by or granted to the respondent. Nevertheless, he did not see fit to file a brief until July 3, 1946.

The writ of mandamus which the relator seeks is not a matter of right. *State ex rel. Costelo* v. *Middlesex Banking Co.*, 87 Conn. 483, 487. On the contrary it is an extraordinary remedy to be granted in the sound legal discretion of the court only in situations where the relator has a clear legal right and the matter is substantial. *State ex rel. Shelton* v. *Edwards*, 109 Conn. 249, 253; *Chesebro* v. *Babcock*, 59 Conn. 213, 218. It is the settled policy of our courts to restrict the issuance of the writ to the limits established by the common law. *Duane* v. *McDonald*, 41 Conn. 517, 522. The writ will not issue against a public officer unless "(1) the party against whom the writ is sought be under an obligation imposed by law to perform some such duty, that is, a duty in respect to the performance of which he may not exercise any discretion; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other sufficient remedy." *State ex rel. Rowell* v. *Boyle*, 115 Conn. 406, 412.

It has been repeatedly held that the writ will not be granted to control the exercise of discretion vested in a public official. In the Matter of *Gilhuly's Petition*, 124 Conn. 271, 277; *State* v. *Staub*, 61 Conn. 553, 555. However, if an official is vested with discretion the writ may, nevertheless, issue to compel him to act if he refuses to exercise his discretion, but it will not issue to direct him as to the manner in which he will exercise

his discretion. *Seymour* v. *Ely,* 37 Conn. 103, 106. On the other hand, if no discretion is involved and the law requires an act to be done under a given state of facts which are found to exist, then the act is ministerial only and the writ may issue. *State ex rel. Heimov* v. *Thomson,* 131 Conn. 8, 12. "A ministerial act is one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act being done." *American Casualty Ins., Co.* v. *Fyler,* 60 Conn. 448, 460, quoting from *Flournoy* v. *City of Jeffersonville,* 17 Ind. 169, 174.

It is the application of these principles to the facts in this case which must determine the issue. There can be no question upon the facts that if the respondent should be held to have discretion that he has not refused to exercise it. Clearly he has taken action by refusing to certify. Consequently the question resolves itself into one as to whether the act required of the respondent is ministerial and, therefore, subject to mandamus or discretionary and therefore, not subject to the writ. There can be no doubt that the general duties of the comptroller vest him with wide discretion. Section 69 of the Bridgeport City Charter, Revision 1939, directs him to keep or cause to be kept complete books of account showing all financial transactions of the several departments of the city, prepare reports as required by the common council, certify the availability of the appropriated funds of every department except purchases or contracts made by the board of education, and the board of park commissioners, and his certificate is required to make any purchase order or contract a valid obligation of the city. He is to audit all bills and claims presented for payment and he has power to require each city official to furnish all the information he may possess and exhibit all books, documents, and the like, in his possession necessary to enable the comptroller to discharge his duties. He signs warrants for the payment of all invoices except bills and claims of the board of education, and checks in payment of the city debt. Although an exception is made with respect to the board of education in defining the general powers and duties of the comptroller, he is, on the other hand, given definite duties with respect to the board of education under § 155 of the charter, hereinbefore quoted, namely, with respect to bills audited and approved by the board of education and reported to him to "certify whether or not the appropriation is sufficient for the payment thereof."

The reasoning adopted by the court in *State ex rel. Foote* v. *Bartholomew,* 103 Conn. 607, is helpful in this situation. That was an application for a mandamus to compel the board of relief to add certain real estate to the assessment list in the town of Branford. A motion to quash was made which, having the the force of demurrer under our practice, operated to admit the allegations of the alternative writ. One of these allegations was that the property omitted from the list was taxable property. The court in that case, at page 616, makes this significant statement: "By their own act the respondents have removed the questions of taxability and exemption from consideration, have excluded all right to claim discretionary or judicial action in construction of statutes, and stand in the position of refusing to perform a clear legal duty." The clear import of the decision in that case is that had the motion to quash not admitted the taxability of the property a material question in determining whether or not the repondents were called upon to perform a discretionary, as distinguished from a ministerial, duty would have involved the issue of their right to determine a matter of statutory construction. That, it seems to me, is the precise question which confronted the respondent in this case. The charter directed him to certify "whether or not the appropriation is sufficient for the payment thereof." He has construed that to mean in substance that he shall not certify a partial payment under a continuing item unless the specific appropriation for that item is sufficient to absorb the entire payment of which the immediate request is a part. It is reasonable to assume that he took into account § 477 of the General Statutes, requiring all appropriations to be specific, and § 182 of the General Statutes, imposing a substantial criminal penalty upon any public official who wilfully authorizes or contracts for the expenditure of money or the creation of a debt for any purpose in excess of the amount specifically appropriated, subject to certain exceptions none of which, according to the record in this case, appear to exist. See *Chatfield Co.* v. *Waterbury,* 88 Conn. 322; *Dellaripa's Appeal,* 88 Conn. 565.

It is significant, in connection with the respondent's interpretation of his statutory duty, that the relator's approval of these bills for payment allocated them to be charged against the specifically designated items of their appropriation which the respondent considered in making his decision. Whether the construction which the respondent placed upon his duty, as defined by the charter, is correct or not, however, is not decided in this

action. The essential issue is that he was required to certify whether or not the "appropriation is sufficient." That called for the exercise of discretion. The method which the respondent adopted in arriving at his conclusion indicates that he exercised discretion. Whether his decision was right or wrong is of no moment in this proceeding. A writ of mandamus cannot issue simply for the purpose of compelling him to change his decision.

As previously indicated, since the record is entirely silent as to the reason behind the relator's action, the court is left in the position of being unable to determine whether other adequate remedy exists. This is but another way of saying that the relator fails to establish that there is no other sufficient remedy. For this reason also the writ cannot properly issue. *State ex rel. Rowell* v. *Boyle,* supra.

Judgment may enter denying the issuance of a peremptory writ of mandamus.