UNITED STATES ex rel. SIEGEL v. BOARD OF LIQUIDATION OF NEW ORLEANS.

(Circuit Court of Appeals, Fifth Circuit. May 26, 1896.)

No. 488.

MANDAMUS—COMPELLING PERFORMANCE OF ACT FORBIDDEN BY LAW—LOUISIANA CONSTITUTION.

Article 254 of the constitution of Louisiana of 1879 made it the duty of the general assembly to enact legislation to liquidate the indebtedness of the city of New Orleans, and apply its assets to the satisfaction thereof. Thereupon the general assembly, by Act 133 of 1880, amended by Act 67 of 1884, created the board of liquidation of New Orleans, with authority to refund the floating debt of the city by the issue and sale of bonds; but both acts expressly excluded from the refunding, so provided for, the floating debt of the year 1879. One S., holding claims against the city, which were a part of the floating debt of that year, applied for a mandamus to compel the board of liquidation to fund or pay his claims, averring that the exclusion of his claims from the benefit of the refunding scheme was in violation of said article 254 of the constitution. *Held,* that even if such exclusion was unconstitutional, the general assembly having made no provision for the board of liquidation to refund or pay S.'s claims, but having expressly forbidden it to do so, the court could not, by mandamus, compel the board to issue bonds to S., under the refunding scheme.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

Chas. Louque and J. R. Beckwith, for plaintiff in error.
Branch K. Miller, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and SPEER, District Judge,

SPEER, District Judge. Henry Siegel, a citizen and subject of the empire of Germany, presented to the circuit court for the Eastern district of Louisiana this petition for a writ of mandamus:

The petition averred that he had obtained judgments in that court against the city of New Orleans for the sum of $21,008.36, and that these were payable out of the revenues of the city of New Orleans for the year 1879, and out of the surplus of any subsequent years, pursuant to the terms of section 3 of Act No. 30 of the Statutes of Louisiana for the year 1877. He further avers that under the terms of article 254 of the constitution of Louisiana, and the legislation subsequently enacted, he is entitled to have his judgment funded by the board of liquidation, a corporation created by the laws of Louisiana, but that the board of liquidation refused to fund or pay his judgment. Thereupon he prays for a writ of mandamus to compel it to perform this duty. The board of liquidation of the city debt, through Robert M. Walmsley, its president, and Branch K. Miller, its attorney, made answer to the petition of relator, and set forth that all of the judgments described in his petition were based upon claims which were a part of the floating debt of the city of New Orleans for the year 1879 and subsequent years, or "claims created for or against said years"; that the law creating the board of liquidation for the city debt makes no provision for the cancellation and retirement of such debts or claims, nor for funding of the same into bonds. On the contrary, the board is expressly prohibited from taking such action with regard to any judgment or any items, debts, claims, or matters of floating debts, or claims against the city for or against the year 1879 or subsequent years. On the trial, the issues thus made by the conflicting averments of the relator and the respondent were submitted to a jury in the circuit court, and, on motion, the court directed the jury to find a verdict for the respondent, which the jury accordingly did, and the relator excepted.

Stripped of considerations of an equitable character, resulting from the fact that the relator is a creditor of the city, whose debt has not been paid, and yet whose debtor has, under the authority of legislative enactments, made large provision for the satisfaction of other debts held by creditors of a different class, the naked question presented for our consideration is this, is the relator entitled to the writ of mandamus for which he prays? The constitution of the state of Louisiana, adopted in the year 1879 (article 254), made it the duty of the general assembly of the state to enact such legislation as may be proper to liquidate the indebtedness of the city of New Orleans, and apply its assets to the satisfaction thereof. By Act 133 of the year 1880, the legislature proceeded to the performance of that duty. It created the board of liquidation of the city debt, which board is the respondent here. That board was authorized by the act to retire and cancel the entire floating debt of the city of New Orleans, or, more properly, to refund the same by means of the sale of certain bonds, the issue of which was authorized by the act, and, by the utilization of the proceeds of said bond, to procure the obligations of the city, previously made. The board was, however, expressly inhibited from funding any of the floating debt which had been created up to the date of the passage of the act, whether represented by bonds

of various classes, or by judgment. So fixed was the purpose of the legislature for this exclusion that it was made a penal offense for a member of the board to violate this provision. The bonds were not issued at once, however; and this act of 1880 was amended by Act 67 of 1884, and the amendment allowed the funding of the floating debt for the years prior to 1879. It will be observed that the judgments of the relator are all either for floating debt or claims against the city "for or against the year 1879."

It is material to consider section 2 of Act 67 of 1884, which is as follows:

"Sec. 2. Be it further enacted, etc., that section 3, of Act 133, approved April 10, 1880, be amended and re-enacted so as to read: "That the said board of liquidation of the city debt be and it is hereby authorized and required, and it is made the duty of the said board, to retire and cancel the entire debt of the city of New Orleans now in the form of executory judgments and registered, under the provisions of Act No. 5, of 1870, and that which hereafter may become merged into executory judgments and likewise registered; except the floating debt or claims created for and against the year 1879, and subsequent years; that it is the full intent and meaning of this act to apply solely the privileges thereof to executory judgments, at present rendered against such city, and to such floating debt or claims against said city for 1878, and previous years merged and to be merged into executory judgments, whether absolute or rendered against the revenues of any particular year or years, previous to the year 1879; that for the purpose of retiring and canceling said judgment debt, the said board is authorized and required either to sell the bonds to be issued under this act at not less than their par value and apply the proceeds thereof to the payment of the said judgments, as above specified, or issue said bonds in exchange for said judgments."

It is very plain that it was the purpose of the legislature to exclude from the benefits of the act, claims in the precise category in which the relator's judgments are found. It is this exclusion of which relator complains. He insists that the legislation by which his claims are excluded from the benefit of the funding scheme, provided in the legislative act creating the board of liquidation, and defining its powers, is contrary to the constitution of the state (article 254, supra), and is therefore void. Suppose, however, it be conceded that this is true. The legislature designed, and afforded a special scheme for the satisfaction of debts of a certain class, with a provision expressly precluding the debts like that belonging to the relator from participation in the beneficial adjustment. If we hold that the excluding clause is null, because in violation of the constitution of the state, it follows obviously that, as to claims like those of relator, the legislature has not taken any action at all. The relator is then where the legislature found him. His judgments have all the validity which they possessed. In the present condition of the pleadings, it is not appropriate for this court to make a decision as to the effectiveness of those judgments, or to determine the values belonging to the debtor which may be subjected to their payment.

It seems, however, that in the circuit court the relator was permitted to file a supplemental petition, by which he purposed to insist that he had the right to be paid the amount due on his judgment from any surplus revenue of the city for the year 1879. The

judgments, indeed, contain recitals to that effect, but this claim seems to have been abandoned; and in view of the decision of the supreme court of the United States in the case of U. S. v. Thoman, 156 U. S. 353, 15 Sup. Ct. 378, the abandonment seems to be justified. In that case it was pointed out that the act of 1877 provided that, after deducting the expenses of the year from the revenues of the city, any surplus of such revenue may be applied to the indebtedness of former years. This was, however, to use the language of Mr. Justice White, in rendering opinion, merely "permissive or facultative." The learned justice further remarks: "The surplus having been left by the act of 1877 under the control of the city council, it follows that that act gave to the relator no contract right to such surplus." It would seem to follow that the discretion of the city council could not have been directed by the mandamus of the circuit court to appropriate that surplus in discharge, in whole or in part, of the relator's judgment. However this may be, it is quite clear that the relator is not entitled to the writ in order to compel the board of liquidation of the city debt to deliver him the bonds issued under the funding scheme, when the act authorizing that scheme expressly prohibits it. Mandamus is a legal remedy. If the relator's debt against the city is valid,— and that must be determined in view of the special legislation relative to the creation of claims against the municipality,—resort, it seems, must be had to the more "elastic and flexible" powers of a court of equity, in order to subject the values belonging to the city to its payment.

The case of Board v. Hart, 118 U. S. 136, 6 Sup. Ct. 995, does not contravene this conclusion. In that case the board agreed to fund Hart's claim, and afterwards refused to issue the bonds. There, also, relator's judgment belonged to claims which had been admitted to the benefit of the funding scheme. In other words, in that case the board of liquidation was disregarding the act of 1884, and the supreme court held that they must obey it. Here, they are obeying that act, and the relator seeks to compel them to disregard it. The expression of the supreme court in the Hart Case to the effect that all the property of the city was liable for the payment of its debts is obviously true. But the case before us is not an application for mandamus against the city of New Orleans to compel the payment of the debt; it is an application for mandamus against a particular corporation, seeking to compel the performance of an act from which the corporation, by the terms of the law creating it, is expressly inhibited.

It follows that the judgment of the court below refusing the mandamus is affirmed.