L. J. MUELLER FURNACE CO. v. CROCKETT, Secretary of State.

No. 4070.   Decided April 21, 1924.   Rehearing Denied July 2, 1924.
(227 Pac. 270.)

1. MANDAMUS—WRIT SHOULD ISSUE ONLY WHERE THERE IS NOT PLAIN, SPEEDY, AND ADEQUATE REMEDY IN ORDINARY COURSE OF LAW. Writ should issue only where there is not plain, speedy, and adequate remedy in ordinary course of law, in view of Comp. Laws 1917, § 7392.

2. MANDAMUS—DUTY DEMANDED MUST BE ONE SPECIFICALLY ENJOINED BY LAW. Duty demanded in mandamus proceeding must be one specifically enjoined by law, in view of Comp. Laws 1917, § 7391.[1]

3. MANDAMUS—GRANTING OF WRIT NOT MATTER OF ABSOLUTE RIGHT. Granting of writ is not matter of absolute right, but is largely in discretion of court.

4. MANDAMUS—WRIT DENIED BECAUSE PLAIN DUTY NOT SHOWN. Application for writ commanding secretary of state to accept and file copy of articles of incorporation, by-laws, and amendments, and acceptance of provisions of Constitution as provided in Comp. Laws 1917, § 945, as amended by Sess. Laws 1923, c. 66, without payment of fees required by section 2511, on ground that latter section is unconstitutional, must be denied, because it does not appear to be plain duty of defendant to file papers, in view of sections 7391, 7392.[2]

---

[1] Hamblin v. State Board of Land Comm., 55 Utah, 402, 187 Pac. 178.

[2] Hamblin v. State Board of Land Comm., 55 Utah, 402, 187 Pac. 178; Maxwell v. Burton, 2 Utah, 595.

Application by the L. J. Mueller Furnace Company, for writ of mandate against H. E. Crockett, Secretary of State.

WRIT DENIED.

*James H. Wolfe,* of Salt Lake City, for plaintiff.

*Harvey H. Cluff,* Atty. Gen. and *L. A. Miner,* Asst. Atty. Gen., for defendant.

THURMAN, J.

This is an application for a writ of mandate commanding the defendant, as secretary of state, to accept and file a copy of plaintiff's articles of incorporation, by-laws, and amendments, also its acceptance of the provisions of the Constitution of Utah, as provided in Comp. Laws 1917, § 945, as amended in chapter 66, Sess. Laws 1923.

The defendant, secretary of state, refused to file the papers above mentioned, for the reason that plaintiff refused to pay the fee required by Comp. Laws 1917, § 2511. That section and section 2510, as far as material here, provide that the following fee must be paid in advance to the secretary of state by all corporations whether foreign or domestic:

"For receiving and filing each original or certified copy of articles of incorporation, 25 cents on each $1,000 of the authorized capital stock of the company or corporation."

There is no maximum fee provided in the law. The amount of the fee required depends entirely upon the amount of the authorized capital stock of the company. The plaintiff is a foreign corporation organized in the state of Wisconsin, with an authorized capital of $1,000,000. It carries on business in several states of the United States, as well as in foreign countries, and has not, and does not intend to employ more than $20,000 of its capital stock in the state of Utah in intrastate business.

The specific objections made by plaintiff to the statute requiring the fee provided in section 2511, and its refusal to

pay the fee, are alleged to be that the statute is unconstitutional as far as plaintiff is concerned and is violative of the commerce and due process clauses of the federal Constitution. In other words, it is contended by plaintiff that only a small percentage of its business is intrastate business in the state of Utah, and that therefore the fee demanded is a tax or burden upon its interstate business and on its property in other states. The plaintiff, however, offered to pay, and is ready and willing to pay, the defendant for the benefit of the state, the sum of $5; that being the amount of the fee required for the capital it contemplates using in the intrastate business. Plaintiff has also offered to pay, and is willing to pay, the other fees required by law; its objection in the instant case being confined solely to that portion of section 2511, hereinbefore quoted. It should further be stated that plaintiff does not admit that it is required to pay even the sum of $5 tendered by it under the portion of the section above quoted, but offers to pay such amount in order to show its willingness to pay on the amount of its capital employed in intrastate business in the state of Utah.

In view of what has been said it is unnecessary to state at length the nature and kind of business in which the plaintiff is engaged. It is sufficient to say it is engaged in Wisconsin in manufacturing heating boilers, heating furnaces, registers for hot air heating plants, and furnace pipes and fittings for said hot air heating systems. It also handles radiators, pipes, and fittings for steam, water, and vapor heating systems manufactured by other companies, as a jobber, using its marketing system for the sale of said products of other manufacturers. It maintains in the various cities and states of the United States resident agents to whom goods are assigned for the purpose of selling to dealers in said goods. The average yearly business done by plaintiff in the several states of the Union and in foreign countries amounts to $3,500,000, while that done in Utah has not exceeded the sum of $2,500. It is alleged by plaintiff that it is desirous of doing business in the state of Utah, and as a

part of its general business of marketing its product it has established and maintains a sales office and warehouse in Salt Lake City, with a resident sales agent in charge of said office, and keeps a stock of its products on hand in Utah from which said resident agent, if permitted, will fill orders from dealers only residing in Utah, Idaho, Nevada, Wyoming, Oregon, and Colorado. Said business will involve importing products into Utah from Wisconsin and other states and the exporting of said products from Utah to the states above mentioned, thus involving mainly interstate commerce between Utah and other states. The description of plaintiff's business, as set forth in its petition, is elaborate. We have endeavored to abbreviate it to a marked extent; at the same time stating it sufficiently for the purpose of presenting the questions involved.

On the very threshold of the discussion a preliminary question presents itself to the mind of the court which we cannot afford to ignore, notwithstanding the Attorney General, who appears for the defendant, has not discussed the question in his brief. He did, however, file a general demurerr to plaintiff's complaint under which the question referred to might have been discussed.

As before stated, this is a proceeding in mandamus to compel a public official to perform a certain act. It should be one "which the law specially enjoins as a duty resulting from an office, trust, or station." Comp. Laws Utah 1917, § 7391. The writ prayed for should issue only "where there is not a plain, speedy and adequate remedy in the ordinary course of law." Section 7392. The prayer of the petitioner is that the secretary of state be commanded to immediately accept and file the papers and documents in question, also to accept the money tendered by the plaintiff and to issue a certificate of compliance, as provided in section 2511, or show cause why he should not do so.

Section 945, supra, provides in effect that foreign corporations, before doing business in the state, shall file with the secretary a copy of their articles of incorporation, etc., certified

by the secretary of state in which the company was incorporated.

The fee bill, of which section 2511 is a part, provides, as heretofore stated, that the secretary must collect from the company before filing said papers 25 cents on each $1,000 of its authorized capital stock. The same section also requires a fee of $5 for issuing a certificate of compliance. This latter fee the plaintiff has tendered and is willing to pay. The incongruity of the situation is in fact that as the statute reads the corporation is bound to file said papers with the secretary of state before it can do business in the state, and the secretary is bound to collect the fees in advance before he can file the papers, and, notwithstanding the corporation refuses to pay the fee demanded, it nevertheless demands a certificate of compliance, which implies that it has filed the papers with the secretary of state as required by the statutes referred to. Its excuse, alleged for the demand under these circumstances, is that section 2511, as far as it applies to the plaintiff corporation, is unconstitutional, and is therefore no justification for the refusal of the officer to file the papers.

The functions of the secretary of state are ministerial. The duty demanded of him in a mandamus proceeding is one that must be specially enjoined by law. See *Hamblin* v. *State Board of Land Comm.*, 55 Utah, 402, 187 Pac. 178, and cases cited. It cannot be consistently contended that the secretary of state is bound to file the papers until the fee is paid; nor can it be contended that plaintiff is empowered to designate the amount it shall pay. But, even if it be conceded that the duty under the statute is clear, if we eliminate the statute alleged to be unconstitutional, we still have the further question to meet that a mandamus proceeding is a questionable remedy where the relator's right depends solely on holding that a statute under which the respondent justifies is unconstitutional.

There are many apparently well-considered cases which hold that mandamus is not a proper procedure to test the constitutionality of a statute. As the granting of the writ is

largely a matter of discretion, many courts deny the remedy where it involves the determination as to whether or not a statute is unconstitutional. The following authorities illustrate the proposition: *Maxwell* v. *Burton*, 2 Utah, 595; *State ex rel. Hunter* v. *Winterrowd*, 174 Ind. 592, 91 N. E. 956, 92 N. E. 650, 30 L. R. A. (N. S.) 886; *State ex rel. Lytle* v. *Douglas County*, 18 Neb. 506, 26 N. W. 315; *State ex rel. Port Royal Min. Co.* v. *Hagood*, 30 S. C. 519, 9 S. E. 686, 3 L. R. A. 841; *Ex parte Lynch*, 16 S. C. 40; *People ex rel. Bradley* v. *Stephens*, 2 Abb. Pr. N. S. (N. Y.) 348; *Wright* v. *Kelley*, 4 Idaho, 624, 43 Pac. 565; *People ex rel. Hall* v. *San Francisco*, 20 Cal. 591; 19 A. & E. Ency. Law, 763; Spelling on Interpretation, § 1442. See, also, *United States ex rel. Siegel* v. *Board of Liquidation of New Orleans*, 74 Fed. 489, 20 C. C. A. 622.

In *Maxwell* v. *Burton*, supra, this court, in a mandamus proceeding, at pages 599 and 600, says:

"The validity of the law which imposed the duty upon the respondent to enter the names of the persons named in the register, cannot be brought into question in a proceeding of this kind. We find that there is a law on our statute books in reference to registration, compelling the respondent to do what we are now asked to compel him to undo. We cannot, for the purpose of this proceeding, inquire into its validity."

*State* v. *Winterrowd*, supra, is exceptionally strong and to the point, and we feel justified in quoting from the opinion at considerable length. The defendant in that case was a building inspector of the city of Indianapolis. The relator Hunter applied to the defendant to approve certain plans for an apartment house and to issue a permit to erect the same. The defendant inspector admitted that the plans conformed to the requirements of the city ordinances, but declined to approve the plans and issue the permit because the plans did not comply with the provisions of a certain act of the Legislature. The relator assuming that the legislative act was unconstitutional and void, the state, on relation, instituted a proceeding in mandamus to compel defendant to approve the plans and issue the permit. From the foregoing

statement it is readily seen that the case is exactly in point. At page 957 of the report (91 N. E. [174 Ind. 594]) the court says:

"It was manifestly the purpose of appellant's counsel to invoke the judgment of the courts upon the constitutional validity of the tenement, lodging, and apartment house law of this state, approved March 3, 1909. The constitutional question suggested has been fully and ably briefed, and we have no inclination to evade or postpone its decision, but upon mature consideration have concluded that the question is not properly presented for decision in this proceeding. It is provided by statute in this state that 'writs of mandate may be issued to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, or a duty resulting from an office, trust, or station.'"

Omitting, for the sake of brevity, what immediately follows, although instructive and in point, we quote further from the opinion at page 958 (174 Ind. 596):

"Conceding that the terms of the building ordinance of the city of Indianapolis required appellee to approve the plans submitted, the complaint discloses that a statute of this state prohibits the erection of a building in accordance with such plans. The statute is paramount, and it is elementary that a municipal ordinance, in so far as it conflicts with the statute law of the state, is void. The relator is not asserting a clear legal right, but merely a claim of right, which he is seeking to have the courts in this action establish by striking down a legislative enactment prohibiting the thing which he desires to do. The respondent was not requested to perform a duty enjoined by law, but to do an act in plain disregard of the provisions of a public statute, which it is the duty of every officer and citizen to obey until repealed or judicially overthrown in a proper proceeding. It was not the province of appellee as building inspector to pass upon the constitutional validity of the statute; but his duty was unquestionably to obey its mandates. The alleged neglect of duty is not clear and plain, but will only appear in case the courts first establish the supremacy of the municipal ordinance over the statute by declaring the latter invalid and void. The duty charged to appellee, performance of which is sought to be enforced herein, is not enjoined by law, pre-existent and imperative, but must in this proceeding be created, ascertained, and imposed. The validity of an objectionable statute should be litigated in an appropriate civil action between adversary parties, and in our opinion a petitioner for a writ of mandamus may not require the court to declare such

statute unconstitutional in that proceeding as a condition precedent to the issuance of the writ demanded"—citing many cases among which is *Maxwell* v. *Burton*, 2 Utah, 595, to which we have referred.

*Port Royal Mining Co.* v. *Hagood,* supra, was an application for mandamus against defendant and other members of the board of agriculture, requiring them to issue to the ·relator a license to mine phosphate rock, under the circumstances stated in the opinion. The board, in the exercise of its discretion, under a certain act of the Legislature, refused to grant the license. The contention of the relator was that the act as construed by the board was a delegation of legislative powers and therefore unconstitutional and void. In commenting on this phase of the case the court, at page 524 of the report (30 S. C. [9 S. E. 688]) says:

"It is insisted, however, that if this be the proper construction of the act of 1884, it is void under the Constitution of the state, and affords no justification for the respondents in refusing the license, for the reason that it was a delegation of legislative powers to the board of agriculture. We have just seen that mandamus only lies for the enforcement of a plain ministerial duty, but it is not obvious how that can be a plain duty which is only made to appear by declaring an act of the Legislature unconstitutional. It is not the province of the board of agriculture to determine the constitutionality of laws, defining their own powers; nor will the courts, upon summary proceedings in mandamus, determine as to the constitutionality of statutes affecting the rights of third persons. *Ex parte Lynch, Trustee,* 16 S. C. 40."

In *Ex parte Lynch, Trustee,* cited in the last quotation, the court, at page 39, uses the following language:

"To have corrected an alleged error in a tax duplicate is not a plain ministerial duty, but requires the exercise of discretion and judgment, especially when, according to the terms of the law, there has been no error. As the law reads, it was the duty of the auditor to add, and of the comptroller general to have enforced, the 50 per cent.; but, in the face of the provision, we are asked to compel the comptroller to strike it off, on the ground that the law is unconstitutional. That can hardly be considered a duty 'certain' and allowing of 'no discretion,' which can only be made to appear by ignoring the law as it stands. It is not the province of the comptroller general to decide upon the constitutionality of laws under which it is his duty to act in supervising the collection of taxes."

In *Wright* v. *Kelley*, supra, decided by the Supreme Court of Idaho, the fourth headnote reads:

"The constitutionality of an act of the Legislature cannot be determined collaterally by the court in an application for a writ of mandate by a private party to enforce a private right."

In *State* v. *County of Douglas*, supra, decided by the Supreme Court of Nebraska, the single headnote reflects the opinion:

"On an application for a mandamus against the county commissioners of Douglas county to compel them to call an election in the city of Omaha for twelve justices of the peace therein, there being six precincts, and alleging that an act reducing the number of justices in said city to three was unconstitutional and void, held, that the court would not in that proceeding determine whether or not the act was in contravention of the Constitution."

Many authorities to the same effect might be referred to if time and space would permit, but it is unnecessary to burden the opinion with further citations. Without referring specifically to cases holding to the contrary it is sufficient to say there is a decided conflict among the authorities concerning this particular question. The apparent conflict, however, is not always irreconcilable. It is elementary in the law of mandamus that the granting of the writ is not a matter of absolute right, but is largely in the discretion of the court. This no doubt accounts for much of the apparent conflict.

·Lest there be a misconception of the views of the court respecting the question whether, in any case, mandamus may not be resorted to to test the constitutionality of a statute, we deem it prudent to say there may be cases in which the constitutional question involved is so clear and free from doubt, and the relief demanded so meritorious, that the court in the interest of justice should exercise its discretion by granting the writ. But the court is of opinion that the case at bar is not a case of that kind.

It is also elementary, as well as a condition imposed by statute that the writ of mandate should not be granted where there is a plain speedy, and adequate remedy at law.

Among the numerous cases relied on by plaintiff, in which

relief was sought against the enforcement of a statute on the alleged grounds that it was unconstitutional, we have found none wherein relief was sought by proceedings in mandamus. Some of the cases are proceedings in quo warranto. In some the plaintiff paid the fee under protest and brought an action to recover the amount paid. In others suits were brought against the proper state officers to enjoin the enforcement of the law. There may have been other remedies resorted to which the writer has overlooked in his examination of the case. The remedy afforded plaintiff by paying the fee under protest and bringing an action to recover the amount seems to be plain, speedy, and adequate. In such a proceeding the plaintiff would have an undoubted right to test the constitutionality of the statute, assuming that it was in a position to raise the question in any proceeding. If this view is correct, the writ prayed for might well be denied on that ground alone.

But it seems to the court that this is a case in which the court is clearly justified in exercising its discretion to deny the writ. The incongruity referred to near the beginning of this opinion presents a situation wholly incompatible with the allowance of the writ. It certainly cannot be contended that it is the clear duty of the secretary of state to file the papers without the payment of any fee at all; nor is it clear, in any sense, that he should be compelled to perform the service demanded on payment of such fee as plaintiff arbitrarily fixes and is willing to pay. It should be remembered that the act sought to be compelled should be one which "the law specially enjoins as a duty resulting from an office, trust or station." There is no law requiring the secretary of state to file the papers in question without a fee, or for such fee as the plaintiff sees fit to pay. It cannot therefore be contended that it was the plain duty of the defendant to file the papers.

For the reasons herein stated, the writ should be denied at plaintiff's costs. It is so ordered.

WEBER, C. J., and GIDEON, FRICK, and CHERRY, JJ., concur.

## On Application for Rehearing.

PER CURIAM. The brief of plaintiff on application for rehearing finds fault with the opinion principally on the assumption that the court held mandamus was not a proper proceeding to test the constitutionality of a statute. The opinion does not go to that extent. The authorities upon the question are conflicting. We so stated in the opinion.

Assailing a solemn act of the Legislature on the grounds that it is unconstitutional always presents a serious question. When a mere ministerial officer is requested to perform an act which involves the necessity of his assuming that a statute prescribing his duties is unconstitutional, it becomes doubly serious, and in such case the duty may not be clear or reasonably free from doubt. If it is not clear or reasonably free from doubt, he should not be compelled to perform the act by a mandamus proceeding. That is the point we endeavored to make. As to this particular feature, the last paragraph of the opinion aptly expresses the mind of the court.

Criticism is made of one of the Utah cases cited and quoted from in the opinion. It is contended that the case has been overruled by later cases to which we did not refer. The case subjected to plaintiff's criticism was not relied on as in any sense controlling, and the matter is not of sufficient importance to justify extended comment. Assuming that there may be something in plaintiff's contention, and that the citation of the case might afford an excuse for disputation in the future, the citation will be stricken.

With this modification the application for rehearing is denied.