2002 UT 73

John W. (Jack) GALLIVAN, an individual; Michael D. Gallivan, an individual; Frank R. Pignanelli, an individual; Phyllis Sorenson, an individual; Susan M. Kuziak, an individual; and Linda Sue Dickey, an individual, Petitioners,

v.

Olene WALKER, in her official capacity as Lieutenant Governor of the State of Utah, Respondent.

No. 20020545.

Supreme Court of Utah.

July 26, 2002.

Lisa Watts Baskin, Salt Lake City, for petitioners.

John Gallivan, Phyllis Sorenson, Susan Kuziak, Linda Dickey Deno G. Himonas, John A. Pearce, Salt Lake City, for petitioners Michael Gallivan, Frank Pignanelli.

Mark L. Shurtleff, Att'y Gen., Thomas D. Roberts, Asst. Att'y Gen., for respondent.

David Jordan, Mark E. Hindley, Marc T. Rasich, Salt Lake City, for intervenors Gene Davis, Peter C. Knudsen, Howard A. Stephenson, Michael G. Waddoups, James R. Gowans, Utahns Against Unfair Taxes.

## Memorandum Decision

DURHAM, Chief Justice.

¶ 1 Petitioners seek an extraordinary writ from this court pursuant to section 20A–7–207(4) of the Utah Code containing the following relief: (1) a declaration that Utah's multi-county requirement, contained in section 20A–7–201(1)(a)(ii) of the Utah Code is unconstitutional; (2) a declaration that the Radioactive Waste Restrictions Act initiative petition was sufficient under section 20A–7–207(2) of the Utah Code; and (3) an order directing respondent Lieutenant Governor Walker to accept and file the petition and to place the initiative on the 2002 general election ballot.

¶ 2 The statute upon which petitioners rely provides in part:

(4)(a) if the lieutenant governor refuses to accept and file any initiative petition that a sponsor believes is legally sufficient, any voter may, by July 20, apply to the Supreme Court for an extraordinary writ to compel the lieutenant governor to do so.

(b) The Supreme Court shall:

(i) determine whether or not the initiative petition is legally sufficient; and

(ii) certify its findings to the lieutenant governor by July 30.

Utah Code Ann. § 20A–7–207 (2001).

¶ 3 Subsection (2) of the foregoing statute prescribes the acts that are to be undertaken by the lieutenant governor in determining the sufficiency of initiative petitions. Those acts are entirely ministerial and consist solely of counting the certified names on the petitions and comparing the total number to the statutorily required number. It is clear to us that the role of the Supreme Court pursuant to subsection (4), set forth above, is to decide whether the lieutenant governor has properly performed this statutory duty. We do not believe that the statute confers jurisdiction to consider the constitutionality of the statutory scheme regulating the initiative signature process, which is all petitioners seek, and we therefore decline to consider the petition for an extraordinary writ pursuant to section 20A–7–207(4).

¶ 4 Notwithstanding our determination that section 20A–7–207 does not confer jurisdiction over the questions raised in this petition, we have determined to treat the petition as one for an extraordinary writ pursuant to article VIII, section 3 of the Utah Constitution. "Our cases demonstrate the practical utility of the flexibility of extraordinary writs in various circumstances." *Renn v. Utah Bd. of Pardons*, 904 P.2d 677 (Utah 1995), and this court has on at least one occasion considered the exigencies dictated by timing in an election-related case to permit the determination of a constitutional question in an extraordinary writ proceeding. *See Nelson v. Miller*, 25 Utah 2d 277, 480 P.2d 467 (1971). Although an alternative legal remedy by way of a declaratory judgment action theoretically exists here, we are persuaded that it is not adequate to respond to the relief sought, namely, the placement of this petition on this ballot. Petitioners' claim is that they are entitled to that relief under the state and federal constitutions, and we do not deem it adequate to deny them a hearing on that question merely because they, or someone else, might raise the same constitutional question in connection with another future ballot. Likewise, we are persuaded

that the statutory scheme has been challenged on its face, and we do not believe that the absence of a factual record impairs our ability to assess the constitutionality of that scheme as written.

¶ 5 Finally, the court desires additional briefing from the parties on two questions: (1) What is or should be the standard for determining the freedom of expression and equal protection issues under the Utah Constitution? (2) What considerations affect the severability question when all portions of the initiative statute (the geographic distribution requirements, the percentage requirements, and the "signature rescission" provisions) are considered as a whole and separately?

¶ 6 We understand that an opinion issued by this court on or before August 30, 2002, will permit the inclusion of the initiative on the general election ballot if the court determines that the statutory scheme is unconstitutional. Therefore, we direct the parties to file simultaneously their memoranda addressing the supplemental questions no later than 12:00 noon on Tuesday, August 6, 2002. The court will then deem the matter submitted for decision and will issue its opinion on the constitutional questions by August 30.

¶ 7 Justice HOWE, Justice RUSSON, and Judge DAVIS concur in Chief Justice DURHAM'S opinion.

THORNE, Court of Appeals Judge, concurring in part and dissenting in part.

¶ 8 I concur with the court's decision holding that Utah Code Ann. § 20A–7–207(4) (1998) does not confer jurisdiction upon this court to consider a constitutional challenge to the statute.

¶ 9 I respectfully dissent from today's decision to assert jurisdiction over this action, and thereby examine petitioners' underlying substantive claim, pursuant to this court's extraordinary writ authority.

¶ 10 In the instant case petitioners do not argue that the lieutenant governor improperly counted the number of signatures, nor do they argue that the lieutenant governor somehow improperly designated certain signatures to the wrong counties. In fact, after accepting that the lieutenant governor properly discharged her duty under the law, thereby performing the only clear duty before her, petitioners argue that the law as written violates their constitutional equal protection and first amendment rights.

¶ 11 I agree that the court has the discretion to determine constitutional claims in the context of an extraordinary writ. However, " '[t]he granting of the writ [of mandamus] is always a matter of discretion with this court and never a matter of right on behalf of the applicant.' " *Renn v. Utah Bd. of Pardons,* 904 P.2d 677, 683 (Utah 1995) (alteration in original) (quoting *State v. Ruggeri,* 19 Utah 2d 216, 429 P.2d 969, 971 (1967)); *see also Mueller v. Crockett,* 63 Utah 479, 227 P. 270, 273 (1924). I am not, however, convinced of the wisdom of doing so in this case. This court has previously sounded a cautionary note about such an exercise. "The validity of an objectionable statute should be litigated in an appropriate civil action between adversary parties, and in our opinion a petitioner for a writ of mandamus may not require the court to declare such statute unconstitutional in that proceeding...." *Mueller,* 227 P. at 273.[1]

¶ 12 My concern with the majority's approach is that without a present clear duty to act, an extraordinary writ does not appear to be the proper vehicle to provide petitioners with the relief that they seek. We have held that

[a]ssailing a solemn act of the Legislature on the grounds that it is unconstitutional always presents a serious question. When a mere ministerial officer is requested to perform an act which involves the necessity of his assuming that a statute prescrib-

---

1. "[I]f the allegations of a complaint for a writ of mandamus indicate that the real objects sought are declaratory judgment and a prohibitory injunction, the complaint does not state a cause of action in mandamus and must be dismissed for want of jurisdiction." *State ex rel. Grendell v. Davidson,* 86 Ohio St.3d 629, 716 N.E.2d 704, 710 (1999). This view is not, however, universal- ly applied and has been the basis of dissent. "The distinction is between the use of the writ to enforce a duty that is prospective in the sense that it is to be performed in the future, ... and the use of the writ to create a duty that never existed...." *People ex rel. Scott v. Kerner,* 32 Ill.2d 539, 208 N.E.2d 561, 568 (1965) (Schaefer, J., dissenting).

ing his duties is unconstitutional, it becomes doubly serious, and in such case the duty may not be clear or reasonably free from doubt. If it is not clear or reasonably free from doubt, he should not be compelled to perform the act by a mandamus proceeding.

*Mueller*, 227 P. at 274 (per curiam).

¶ 13 I believe that our exercise of such authority should only occur " 'when the claimant has demonstrated that he or she has no adequate alternative means of obtaining that relief sought and is clearly and indisputably entitled to such relief.' " *Beamon v. Brown*, 125 F.3d 965, 969 (6th Cir.1997) (quoting *Dacoron v. Brown*, 4 Vet.App. 115, 119 (1993)); *see also State ex rel. Grendell v. Davidson*, 86 Ohio St.3d 629, 716 N.E.2d 704, 710 (1999) (per curiam) (stating "constitutional challenges to legislation are normally considered in an action originating in a court of common pleas rather than an extraordinary writ action filed [in the supreme court]"). While I am not unsympathetic to petitioners' plight, I do not conclude that petitioners have demonstrated, at a minimum, they are so clearly and indisputably entitled to the relief requested that this court's extraordinary writ authority should be invoked.

¶ 14 We have previously opined that "there may be cases in which the constitutional question is so clear and free from doubt, and the relief demanded so meritorious, that the court in the interest of justice should exercise its discretion by granting the writ." *Mueller*, 227 P. at 273–74. I do not believe that this is such a case.[2] I would dismiss the writ and provide petitioners the opportunity to pursue a declaratory action in the district court.[3]

¶ 15 Accordingly, I dissent from the decision to accept jurisdiction and address the constitutional question that has been presented.

---

**2.** I disagree with the majority's reliance on *Nelson v. Miller*, 25 Utah 2d 277, 480 P.2d 467 (1971). While the *Nelson* court did address the constitutionality of a statute within the context of an extraordinary writ, it did so without the appropriate level of caution suggested in *Mueller*. See *Mueller*, 227 P. at 272–73.

¶ 16 Having disqualified himself, Associate Chief Justice DURRANT does not participate herein, and Justice WILKINS does not participate herein; Court of Appeals Judges JAMES Z. DAVIS and WILLIAM A. THORNE sat.

---

**3.** This has the additional advantage of permitting a trial court to establish a clear record upon which a constitutional analysis may be performed.