*This opinion is subject to revision before final publication in the Pacific Reporter*

**2017 UT 3**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

MELVIN R. BROWN,
*Petitioner,*

*v.*

SPENCER COX,
Utah Lieutenant Governor, et al.[1],
*Respondents.*

No. 20160669
Filed January 11, 2017

On Direct Appeal

Attorneys:

Duane L. Ostler, Keven J. Stratton, Scott O. Stratton, Orem,
for petitioner

Sean D. Reyes, Att'y Gen., Thom D. Roberts, Asst. Att'y Gen.,
Stanford E. Purser, Deputy Solic. Gen., Salt Lake City,
for respondent Spencer Cox

Robert K. Hilder, David L. Thomas, Jami R. Brackin, Coalville,
for respondent Kent Jones

David R. Irvine, Janet I. Jenson, Salt Lake City,
for respondent Logan Wilde

JUSTICE PEARCE authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE DURHAM, and JUSTICE HIMONAS joined.

JUSTICE PEARCE, opinion of the Court:

---

[1] Other respondents are UTAH STATE BOARD OF CANVASSERS; JOANN EVAN, Duchesne County Clerk; STACY NETZ CLARK, Morgan County Clerk; BECKY PEART, Rich County Clerk; KENT JONES, Summit County Clerk, LOGAN WILDE, and JOHN DOES 1–10.

## INTRODUCTION

¶1  Petitioner Melvin Brown lost his Republican Primary election for the Utah House of Representatives by nine votes. He challenges that result under Utah's election contest statute, Utah Code section 20A-4-403(2). Brown argues that he would have prevailed if a number of disqualified ballots had been counted. Brown filed a verified complaint in this court under Utah Code section 20A-4-403(2). Utah Code section 20A-4-403(2)(a) instructs a registered voter to file a petition in the district court where the petitioner resides if the election involves voters from a single county and to file in the Utah Supreme Court when the voter contests a multi-county election.

¶2 We hold that Utah Code section 20A-4-403(2)(a)(ii), which purports to provide this court with original jurisdiction over multi-county election contests, is an unconstitutional expansion of this court's original jurisdiction.

## BACKGROUND

¶3  The primary election for Utah House District 53 was held on June 28, 2016. District 53 includes the north of Duchesne County and all of Daggett, Morgan, Rich, and Summit Counties. Approximately 95 percent of voters cast their ballots by mail. Because the difference between votes cast for Logan Wilde and votes cast for Brown equaled less than 0.25 percent of the total number of votes cast for all candidates, the county clerks recounted the ballots. *See* UTAH CODE § 20A-4-401(1)(a). Election officials disqualified thirty-two ballots under Utah Code section 20A-3-302(5) because the signatures on the ballots did not match the voters' signatures maintained on file. Election officers rejected another seventy ballots because the ballots had not been postmarked or "otherwise clearly marked by the post office as received by the post office before election day," as Utah Code section 20A-3-306(2)(b) mandates. Brown requested that the Lieutenant Governor recount the ballots in accordance with Utah Code section 20A-4-401(1).

¶4 With respect to the thirty-two ballots disqualified for unverified signatures, Brown asked the Lieutenant Governor to verify that election officials followed the process Utah Code section 20A-3-302(5)(b) requires: to "immediately contact the voter to verify the signature" before disqualification. With respect to the seventy ballots postmarked on election day, Brown asserted that although many rural voters placed their ballots in the mail on the day before the election, their ballots were not postmarked until the day of the

election. After investigation, the Lieutenant Governor expressed sympathy to Brown but concluded that the statute did not allow the contested votes to count. Following an official canvass, the Lieutenant Governor certified Wilde as the winner of the primary election by nine votes.

¶5 On August 12, 2016, Brown filed a verified complaint in this court contesting the results of the primary election under Utah Code section 20A-4-403(2). Brown names as respondents the Lieutenant Governor, the Utah State Board of Canvassers, the county clerks of the affected counties, and government official "John Does 1–10 . . . who are or may be responsible for multi-county elections in the State of Utah."[2] The Complaint raises two causes of action that track the two issues Brown raised in his letter to the Lieutenant Governor. First, Brown asks us to "open the ballots" and to obtain "further evidence . . . from the 70 voters as to when and where they mailed their ballots." Brown argues that those seventy voters substantially complied with the election statute by placing their ballots in the mail prior to election day and should not be disenfranchised by having their votes disqualified. He further contends that if we determine that Brown received at least ten additional votes, we should issue a Writ of Mandamus to respondents and order them to count the seventy votes that were not postmarked before election day. Second, with regard to the remaining thirty-two ballots disqualified for unverified voter signatures, Brown hypothesizes that respondents "may not have fully complied" with statutory requirements laid out in Utah Code section 20A-3-302(5) because respondents "may not have individually contacted the voters . . . to verify the signature as required by . . . statute." With regard to his second cause of action, Brown requests that this court issue a Writ of Mandamus directing respondents to recognize all ballots that were improperly disqualified.

¶6 This court held a scheduling conference on August 23, 2016. We invited the parties to brief whether Utah Code section 20A-4-403(2)(a)(ii) unconstitutionally expanded this court's jurisdiction.[3]

---

[2] The Verified Complaint initially did not name Logan Wilde as a respondent as required by Utah Code section 20A-4-403(2)(b)(vi). Brown later added Wilde by stipulation.

[3] We have noted that this court may raise jurisdictional issues sua sponte and that "acquiescence of the parties is insufficient to confer
(continued . . .)

Both Brown and the Lieutenant Governor argue that Utah's Election Code is entitled to a strong presumption of constitutionality. Brown argues that the jurisdiction conferred by section 20A-4-403(2)(a) is constitutional because "it does nothing more than specify Supreme Court jurisdiction in multi-county elections . . . for pursuit of an extraordinary writ in an election contest." Furthermore, Brown argues that we cannot limit the Legislature's power to expand this court's jurisdiction.

¶7 The Lieutenant Governor suggests that we interpret the Verified Complaint as a petition for extraordinary writ. The Lieutenant Governor argues that, though the requirements found in section 20A-4-403(2)(a)(ii) do not overlap precisely with the court rules that govern petitions for extraordinary writ, we should hold that the statute "fill[s] the gaps" in our rules of procedure for special statutory proceedings such as election contests.

¶8 Wilde disagrees with Brown and the Lieutenant Governor. Wilde argues that the election contest statute is an unconstitutional expansion of this court's original jurisdiction. Wilde identifies two problems this court would face if the statute conferred jurisdiction: (1) the Utah Supreme Court would be required to act as a finder of fact and (2) the floodgates of litigation would be opened by forcing this court to address every disputed election in multi-county legislative districts.

¶9 On August 26, 2016, we issued a per curiam order holding Utah Code section 20A-4-403(2)(a)(ii) unconstitutional. We recognized that the Legislature cannot expand this court's constitutionally established original jurisdiction. We also rejected the invitation to interpret the Election Code as an amendment to the Utah Rules of Appellate Procedure. The order provided that we would interpret Brown's original Complaint as a petition for extraordinary writ but noted technical deficiencies with that pleading. We thus afforded Brown the opportunity to amend his Complaint and set a briefing schedule to permit the matter to be briefed, heard, and decided before the deadline for printing ballots for the general election passed. Rather than amend, Brown moved to dismiss his Complaint.

---

jurisdiction on the court." *A.J. Mackay Co. v. Okland Constr. Co.*, 817 P.2d 323, 325 (Utah 1991).

¶10 We issue this opinion to more fully explain the basis for the August 26 order holding section 20A-4-403(2)(a)(ii) of Utah's Election Code unconstitutional.

**STANDARD OF REVIEW**

¶11 Whether a statute is constitutional presents a question of law. *See State v. Drej*, 2010 UT 35, ¶ 9, 233 P.3d 476. We presume the statute is constitutional, and we "resolve any reasonable doubts in favor of constitutionality." *Id.* (citation omitted).

**ANALYSIS**

I. The Utah Supreme Court Lacks Jurisdiction to Hear
Brown's Verified Complaint as an Original Proceeding

¶12 Utah Code section 20A-4-403(2)(a) provides that "[i]n contesting the results of a primary election, . . . a registered voter shall contest the right of any person declared nominated to any office by filing a verified written complaint . . . with . . . the Utah Supreme Court, if he is contesting a nomination made by voters in more than one county." This section of the Election Code requires a registered voter to file a complaint directly with the Utah Supreme Court to challenge a multi-county primary election. In other words, this section purports to extend this court's original jurisdiction to include multi-county election contests.

¶13 Brown encourages us to take "a liberal view of the Legislature's power to grant Supreme Court jurisdiction" and cites *State v. Taylor* for support. 664 P.2d 439 (Utah 1983). In *Taylor*, this court affirmed that "the Legislature clearly has the power to create appellate jurisdiction beyond that granted in the Constitution, so long as the statutory grant does not run afoul of any specific constitutional limitation." *Id.* at 442. We disagree with Brown's assertion that there are "many similarities" between *Taylor* and the present case. In *Taylor*, this court analyzed the Legislature's authority to create *appellate* jurisdiction. The Utah Constitution provides that this court possesses "appellate jurisdiction over . . . matters to be exercised as provided by statute." UTAH CONST. art. VIII, § 3. But the Utah Constitution does not grant the Legislature authority to alter our original jurisdiction.[4] *See id.*

---

[4] The court in *Taylor* focused on the application of article VIII, section 9 of the Utah Constitution as it existed in 1983. *Taylor*, 664 P.2d at 440–41. The 1984 amendments to the Judicial Article of the

(continued . . .)

¶14 Article VIII, section 3 provides this court with original jurisdiction "to issue all extraordinary writs and to answer questions of state law certified by a court of the United States." The Legislature can neither increase nor decrease this court's constitutionally derived powers. In *State ex rel. Robinson v. Durand*, we reasoned that because the Utah Constitution conferred upon the Utah Supreme Court original jurisdiction over petitions of extraordinary writ, it was not "within the province of the Legislature to so modify and enlarge the office of the writ." 104 P. 760, 762 (Utah 1908). The court noted "[i]t must . . . be conceded that whatever power was conferred upon the courts by the Constitution cannot be enlarged or abridged by the Legislature."[5] *Id.* at 762–63; *see also Petersen v. Utah Bd. of Pardons*, 907 P.2d 1148, 1152 (Utah 1995) ("Because this Court's writ powers are derived from the constitution, the Legislature cannot diminish them. As early as 1908, it was established that the Legislature had no power to restrict the writ powers."). Therefore, Utah Code section 20A-4-403(2)(a)(ii) cannot extend the original jurisdiction of this court to adjudicate multi-county election disputes, and we strike that provision of the elections code as unconstitutional.

## II. Section 20A-4-403(2)(a)(ii) Does Not Amend the Utah Rules of Appellate Procedure

¶15 The Lieutenant Governor and Brown argue that we can interpret the statute in a fashion that avoids the constitutional issue. And they correctly note that we will endeavor to avoid constitutional issues by construing "a statute as constitutional wherever possible, resolving any reasonable doubt in favor of constitutionality." *Due South, Inc. v. Dep't of Alcoholic Beverage Control*, 2008 UT 71, ¶ 39, 197 P.3d 82.

¶16 Brown and the Lieutenant Governor contend that we can dodge the constitutional concerns if we read the Election Code's requirements as refinements to the Utah Rules of Appellate and Civil

---

Utah Constitution eliminated the language on which the 1983 *Taylor* court relied. *Compare* UTAH CONST. of 1983, art. VIII, *with* UTAH CONST. art. VIII.

[5] The Utah Supreme Court may exercise appellate jurisdiction "over all other matters to be exercised as provided by statute, and [has] power to issue all writs and orders necessary for the exercise of the Supreme Court's jurisdiction or the complete determination of any cause." UTAH CONST. art. VIII, § 3.

Procedure, which govern petitions for extraordinary relief. The Lieutenant Governor and Brown posit that Utah Code section 20A-4-403(2)(a)(ii) merely provides special statutory procedures for a party seeking a writ in an election dispute.[6] But that interpretation substitutes one constitutional problem for another.

¶17 Article VIII, section 4 of the Utah Constitution compels this court to "adopt rules of procedure and evidence to be used in the courts of the state" and to "manage the appellate process." The Constitution gives the Legislature power to "amend the Rules of Procedure and Evidence adopted by the Supreme Court," but the Legislature may do so only "upon a vote of two-thirds of all members of both houses of the Legislature." UTAH CONST. art. VIII, § 4.[7] By the constitution's plain language, the Legislature does not adopt rules of procedure and evidence; it amends the rules the supreme court creates. In our system of checks and balances, the check on our authority to enact rules of evidence and procedure is the Legislature's ability to amend them by supermajority.[8]

---

[6] As support, respondents cite *Maxfield v. Herbert*, in which this court held that the rules of procedure function to "occupy[] any gaps in special procedures prescribed by statute" unless the statutory procedures "clearly counter and thus override our generally applicable rules." 2012 UT 44, ¶ 17, 284 P.3d 647. In *Maxfield*, this court did not "reach the question of the viability of the procedural provisions of the election code . . . given that the constitutional question ha[d] not been briefed." *Id.* ¶ 15. In the present case, the parties have briefed, and we will address, the constitutional question.

[7] Article VIII, section 4 possesses an interesting structure. Its first sentence references three sets of rules that the Supreme Court shall adopt: "rules of procedure and evidence" and rules that "manage the appellate process." The second sentence references two sets of rules that the "Legislature may amend": "the Rules of Procedure and Evidence." We need not address the meaning, if any, of the Constitution's omission of rules that "manage the appellate process" from the second sentence to decide this matter.

[8] Article VIII, section 4 is a relatively recent addition to our constitution aimed at better defining which branch of government possessed the authority to enact rules of procedure and evidence. Before 1943, the Utah Supreme Court enacted procedural rules, but

(continued . . .)

¶18 We have suggested that article VIII, section 4 requires the Legislature to amend our rules by a joint resolution. Although *Allred v. Saunders* did not require this court to opine on whether the constitution requires a joint resolution, we acknowledged that the district court had concluded that a statute protecting medical peer-review and care-review documents from discovery and rendering them inadmissible was "inoperative because it had been adopted by the Legislature in an unconstitutional manner." 2014 UT 43, ¶ 3, 342 P.3d 204. We noted that "[w]hile the Legislature has the constitutional authority to amend the Rules of Procedure and Evidence adopted by the Utah Supreme Court, it may only do so by joint resolution adopted" by a two-thirds vote of all the members of each house of the Legislature. *Id.* ¶ 3 n.2; *see also State v. Walker*, 2015 UT App 213, ¶ 15, 358 P.3d 1120 (Although a section of the Utah Code "was adopted by a two-thirds majority, 'it constitutes an amendment to a *statute*, not an amendment to a *rule of procedure adopted by the Supreme Court*.'" (citing *Allred*, 2014 UT 43, ¶ 3 n.2)). In *State v. Larsen*, this court observed in dicta that "article VIII, section 4 [of the Utah Constitution] requires any legislation which amends a

---

the Legislature could supersede those rules by statute. *Injured Workers Ass'n of Utah v. State*, 2016 UT 21, ¶ 24, 374 P.3d 14 (citing Kent R. Hart, Note, *Court Rulemaking in Utah Following the 1985 Revision of the Utah Constitution*, 1992 UTAH L. REV. 153, 154 (1992)). Between 1943 and 1951, the Legislature shifted primary procedural rule-making authority to the Utah Supreme Court "by providing that 'all laws in conflict [with court rules] . . . shall be of no further force and effect.'" Hart, *supra*, at 157 (alterations in original) (citing Act of Mar. 6, 1943, ch. 33, 1943 Utah Laws 33 (repealed by Act of Mar. 8, 1951, ch. 58, 1951 Utah Laws 150, 247)). By 1951, the Legislature "expanded the supreme court's rule-making responsibilities to encompass evidentiary as well as procedural rules." *Id.* at 154. In 1983, we reasoned that procedural rulemaking was "the exclusive prerogative of this [c]ourt." *Brickyard Homeowners' Ass'n Mgmt. Comm. v. Gibbons Realty Co.*, 668 P.2d 535, 539 (Utah 1983) (citation omitted). While the 1984 amendment to article VIII, section 4 of the Utah Constitution tempered our holding in *Brickyard* by preserving legislative power to "amend" certain court rules, the amendment solidified our constitutional authority to adopt rules of evidence and procedure. UTAH CONST. art. VIII, § 4; *see State v. Drej*, 2010 UT 35, ¶ 26 n.4, 233 P.3d 476.

court rule to comply with the same legislative joint rules and practice governing amendments to statutes, that is, to refer to the rule specifically by number and indicate how it is to be amended." 850 P.2d 1264, 1267 (Utah 1993).

¶19 The Legislature appears to read the constitutional requirement in the same fashion. Joint Rule 4-1-301(4) provides that "joint resolution[s] proposing to amend the Utah Supreme Court's Rules of Procedure or Rules of Evidence" must include the following resolving clause: "Be it resolved by the Legislature of the state of Utah, with at least two-thirds of all members elected to each of the two houses concurring . . . ." Thus, the Legislature's joint rules not only require passage of a joint resolution but also require a resolving clause that clearly indicates an intent to amend.

¶20 We recognize that the Utah Constitution does not explicitly specify that the Legislature amend our rules by joint resolution when it requires "a vote of two-thirds of all members of both houses of the Legislature." UTAH CONST. art. VIII, § 4. There may be other procedural mechanisms by which the Legislature might amend the rules of procedure and evidence. But each of those mechanisms would need to contain a reference to the rule to be amended and a clear expression of the Legislature's intent to modify our rules. This conclusion flows from both the constitutional language and the structure of our constitutional system.

¶21 The Utah Constitution vests the Utah Supreme Court with the obligation and authority to "adopt" rules of procedure, evidence, and the rules that manage the appellate process. UTAH CONST. art. VIII, § 4. In this context, *adopt* takes its well-understood meaning of "to accept formally and put into effect." *Adopt*, MERRIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/adopt (last visited Dec. 5, 2016). The constitution permits the Legislature to "amend" those rules. UTAH CONST. art. VIII, § 4. And again, amend takes its common meaning of to "change or modify." *Amend*, MERRIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/amend (last visited Dec. 5, 2016). By distinguishing between adoption and amendment, the Constitution assigns this court the responsibility to put rules into effect and allows the Legislature to modify them by supermajority.

¶22 By their nature, amendments do not occur in a vacuum but require reference to the text that is to be amended, a principle both this court and the Legislature recognize. Legislative rules dictate that when a bill proposes to amend a statute, "all of the language to be repealed must appear between brackets with the letters struck

through" and "all of the new language proposed to be enacted by the bill must be underlined." Joint Rule 4-1-201(3). In similar fashion, rule 11-102 of the Supreme Court Rules of Professional Practice provides that to change a rule, a petitioner "should set forth the proposed rule, amendment, or instruction, or the text of the rule or instruction proposed for repeal." Thus, to amend a rule of procedure or evidence, the Legislature must reference the rule or rules it seeks to amend.

¶23 Moreover, in our system of constitutional checks and balances, the exercise of a check involves a constitutionally authorized intrusion into the power of a coequal branch of government. Such an intrusion occurs when the Governor vetoes a bill (*see* UTAH CONST. art. VII, § 8) or when this court declares a statute unconstitutional (*see* UTAH CONST. art. VIII, § 2). Each of those checks requires a clear expression of the exercise of constitutional authority. For example, the Governor must return a vetoed bill to the house from which it originated with a statement of his or her objections. *See* UTAH CONST. art. VII, § 8. When we declare a statute unconstitutional, we do so in a written opinion that expresses the reasons for our decision. And when the Legislature intends to modify a rule of evidence or procedure, it must make its intent clear. We will not assume that the Legislature intended to exercise its check on our authority to enact rules just because a statutory amendment passed by a supermajority can be interpreted in a fashion that conflicts with an existing rule of evidence or procedure. In other words, because it involves one branch exercising its constitutional authority to check the power of a coequal branch of government, we will not impute to the Legislature the intent to amend our rules without a clear indication that the Legislature in fact intended to amend our rules. The Legislature can signal its intent effectively through—as the legislative rules recognize—a joint resolution that identifies a specific rule to be amended.

¶24 Because the Legislature passed section 20A-4-403(2)(a)(ii) as a bill amending a statute and not a joint resolution amending a rule of procedure, we cannot interpret it, as the Lieutenant Governor urges, as an expression of legislative intent to modify our rules.

### III. Brown's Verified Complaint Could Be Treated as a Petition for Extraordinary Writ, but It Suffers from Pleading Deficiencies that Need to Be Cured by Amendment

¶25  Brown urges us to treat his Verified Complaint as a petition for extraordinary writ. And, indeed, we have the discretion to consider a pleading filed with us as a petition for extraordinary writ. *See Renn v. Utah State Bd. of Pardons*, 904 P.2d 677, 682 & n.3 (Utah 1995) (finding that requesting extraordinary relief does not require a particular, specialized pleading). We have previously considered pleadings as petitions for extraordinary writ in election cases. In *Gallivan v. Walker*, the proponents of an initiative petition sought an extraordinary writ in accordance with the Election Code. 2002 UT 73, ¶ 1, 54 P.3d 1066. Though this court held that the Election Code "[did] not confer jurisdiction over the questions raised in [the] petition, we . . . determined to treat the petition as one for an extraordinary writ pursuant to article VIII, section 3 of the Utah Constitution." *Id.* ¶ 4. In *Gallivan*, we noted that "the exigencies dictated by timing in an election-related case [may] permit the determination of a constitutional question in an extraordinary writ proceeding." *Id*. We further reasoned that even if alternative legal remedies may have theoretically existed, if we did not consider the pleading as an extraordinary writ, those remedies may not be "adequate to respond to the relief sought." *Id.*

¶26  Brown's Verified Complaint presented time-sensitive issues similar to those in *Gallivan* where this court determined that time constraints in an election-related case favored an extraordinary writ proceeding. The Verified Complaint, filed on August 12, 2016, requested that the court expedite proceedings in order to identify the party nominee by August 30, 2016. As in *Gallivan*, we acknowledge that even if alternative legal remedies exist, those remedies may not be adequate to grant the relief sought as a practical matter. Our August 26 order noted our discretion, but explained that we would not exercise that discretion in this instance because the only ground for jurisdiction Brown had pleaded was the unconstitutional Utah Code section 20A-4-403(2)(a)(ii). We also recognized that the petition suffered from a number of other pleading deficiencies. That order also stated that we would treat an amended pleading that cured those deficiencies as a petition for extraordinary writ.

¶27  Subsection (b) of rule 19 of the Utah Rules of Appellate Procedure lists requirements for petitions for extraordinary writ. Brown's Verified Complaint, as submitted, does not meet all the

requirements rule 19 sets forth. For instance, the Verified Complaint does not contain "a statement explaining why it is impractical or inappropriate to file the petition for a writ in the district court." UTAH R. APP. P. 19(b)(5).

¶28 Requiring Brown to explain why he could not seek his writ in district court in the first instance is more than an exercise in ensuring he incanted magic words. To provide Brown the relief he seeks, this court would need to sort out factual questions. As a general rule, we are not well equipped to tackle that type of question. We have stated, "[w]hen an appellate court considers a petition for extraordinary relief without any record generated by prior litigation or other official proceedings, it ordinarily may grant relief only if that relief is based on allegations properly supported by affidavit or other reliable documentation." *Gricius v. Cox*, 2015 UT 86, ¶ 5, 365 P.3d 1198 (per curiam). We are reluctant "to arrive at a legal ruling that is dependent on the resolution of disputed facts" because we "do[] not conduct evidentiary hearings (except in those rare circumstances in which reference to a special master is deemed appropriate)." *Carpenter v. Riverton City*, 2004 UT 68, ¶ 4, 103 P.3d 127 (per curiam).

¶29 The allegations within the first cause of action of the Verified Complaint would require this court to determine issues of fact. The Complaint alleges that many of the seventy disqualified votes came from counties where the U.S. Postal Service retrieves mail from mailboxes one day but does not postmark them until the next day. The Complaint states that "it is by far most probable that the 70 voters mailed their ballots in their respective counties of residence on the day before the election." In support of these allegations, the Complaint refers to communications with "many" of the seventy individuals who assert they placed their ballots in the mail before election day. Assuming that we were to accept Brown's legal theory, we would have to adjudicate which, if any, of the seventy ballots postmarked on election day were actually mailed before the day of the election. Additionally, Brown states that he personally verified that the U.S. Postal Service often postmarked letters the day after the letters entered the mail by mailing to himself letters from a number of relevant counties. In case we require further evidence, Brown's Complaint invites us to "obtain and open the ballots . . . and thereafter make a request . . . requiring that further evidence be obtained privately from the 70 voters as to when and where they mailed their ballots."

¶30 The allegations contained in the Verified Complaint were not supported by affidavit or other reliable documentation. Based only on the anecdotal evidence provided in the Complaint, we cannot find that disqualification of the seventy ballots was inappropriate. Even if we were to give the cited evidence full weight, we could not admit all seventy ballots because it is still unclear what fraction had actually been mailed before election day. To resolve this issue, Brown urges this court to open an inquiry to determine where and when voters mailed their ballots. This is precisely the type of factual finding we typically reserve for the district courts because they are in a better position to do so. And while we may undertake such an endeavor in the appropriate case, a petitioner needs to explain to us in her petition why we, and not a district court, should resolve those issues. Brown's Verified Complaint did not address this concern and therefore could not meet his burden of convincing us that it was impractical or impossible to file in the district court. We offered Brown the opportunity to amend his pleading to meet that burden. Alternatively, he could have re-filed in district court.[9] Instead of availing himself of either of those options, Brown moved to dismiss his Verified Complaint.

**CONCLUSION**

¶31 We hold that Utah Code section 20A-4-403(2)(a)(ii), which purports to provide this court with original jurisdiction over multi-county election contests, is unconstitutional. We reaffirm that the Legislature must clearly express its intent to amend our rules of procedure and evidence, and that a joint resolution specifically aimed at a rule of evidence or procedure is an effective mechanism

---

[9] We can certainly understand that when time is of the essence, there may be some desire for a party to start in the Utah Supreme Court. The impulse might be especially strong when that party believes that this court will eventually be called upon to resolve the question. And, as referenced above, there may be occasions when it is appropriate to proceed in that manner. But when the question presented involves fact finding on contested facts, a party should assume that it will be better served to first seek a writ in a district court equipped to resolve factual questions with an eye toward asking this court for expedited review on a developed record. Should a party wish to depart from that blueprint, she should be prepared to explain to this court why it needs to resolve the dispute in the first instance.

for the Legislature to express that intent. Finally, though we were willing to consider an amended pleading as a petition for extraordinary writ, Brown did not avail himself of the opportunity to amend the pleading to conform to the Rules of Appellate Procedure. We therefore dismiss Brown's Verified Complaint.

———————